Argued October 11, affirmed October 24, 1956

# DOAN *v.* DOAN
### 302 P. 2d 565

*Donald H. Joyce,* Portland, argued the cause and submitted briefs for appellant.

*David M. Spiegel* argued the cause for respondents. On the brief were Lenske, Spiegel, Spiegel, Martindale & Bloom, Portland.

Before WARNER, Chief Justice, and ROSSMAN, LUSK, BRAND, PERRY and MCALLISTER, Justices.

LUSK, J.

This is a suit for partition of real property and an accounting of the rents and profits thereof.

The court entered a decree as follows: defendants were permitted to borrow money on the real property in question and to pay into the registry of the court from the proceeds of the loan a sum sufficient to satisfy plaintiff's claims. These were fixed at $9191, representing plaintiff's interest in the freehold, roughly one-third of the total value of the property, and $1485 with interest, the amount of an indebtedness owing by defendants to the plaintiff. Upon full payment of her claims plaintiff was ordered to execute a special warranty deed to defendants conveying her interest, the decree to stand in lieu thereof in event of failure of plaintiff to execute such deed. The prayer for an accounting was denied. The decree was entered April 2, 1954, and allowed the defendants until May 1, 1954, to make the required payments. The record shows that on April 30, 1954, the defendants tendered into court $11,512 for the benefit of plaintiff. Plaintiff served and filed notice of appeal on June 1, 1954.

The controversy has its inception in the purchase by the plaintiff and her husband (since deceased), and the defendants, who are the son and daughter-in-law of the plaintiff, of an old residence in the city of Portland in 1946. Under a written agreement between the parties, dated November 25, 1946, the defendants were to take possession of "and use said house as a rooming house, and assume all liabilities therefor, and receive all benefits therefrom."

For reasons unnecessary to state here, the parties fell out, their differences culminating in the commencement of this suit on July 25, 1950. Defendants resisted the plaintiff's right to maintain a suit for partition on the ground that her interest in the property was merely that of a creditor with security. On this issue the court found against the defendants, and they have not appealed.

As the case is presented in this court there are but two questions for our consideration: (1) Is the plaintiff entitled to an accounting? (2) Did the court err in its decree by permitting the defendants to purchase plaintiff's interest rather than ordering a sale of the property?

■ Upon the first question the court held that the plaintiff was not entitled to an accounting in view of the provision of the contract of November 25, 1946, which we have quoted, reserving to the defendants "all benefits" of the operation of the rooming house. With this conclusion we agree.

On the second question, it should be first pointed out that the plaintiff alleged in her complaint that the value of the property is $30,000, and that she was willing to pay $15,000 to the defendants for their interest, and that she does not now complain of the court's finding that her interest was approximately one-third instead of one-half of the whole.

The plaintiff's contention comes simply to this: that neither the pleadings nor the evidence supports the court's resort to the alternative remedy under the partition statute authorized by ORS 105.210, which reads:

"If the court finds that the property can neither be partitioned nor sold without great prejudice to the owners, the court may receive evidence as to

the value of the respective interests, fix the value thereof, and make an order permitting the owners, objecting to the partition or sale, to borrow money upon the property with which to pay off the claims, as so fixed, of the persons demanding a partition or sale. Upon payment of the amount in court, as so fixed, for the satisfaction of the claims of those demanding partition or sale, all right and interest in the property of the parties so demanding partition or sale is satisfied fully and discharged and the property is free and clear of all claims of any such parties.''

■ As to the pleadings, it is argued that the court was not authorized to find that the property could not be sold without great prejudice to the owners in the absence of an allegation to that effect. Neither the section of the Code relating to the complaint in partition (ORS 105.220), nor that specifying what the answer shall set forth (ORS 105.235) contains any such requirement; while ORS 105.245, which authorizes the court to order a sale of the property where partition cannot be made without great prejudice to the owners, expressly dispenses with the necessity for any pleading on that subject. Without such an express provision, it has been held in other jurisdictions, having statutes similar to ours, that whether the property should be sold or divided is not a question of pleading but one of evidence. *Bledsoe v. Hood,* 44 Ariz 292, 36 P2d 564, 95 ALR 1327; *De Uprey v. De Uprey,* 27 Cal 329, 87 Am Dec 81. And see 40 Am Jur 59, Partition § 71. We think that this is a correct view of the law, and hold that it was not necessary to plead the facts which justify application by the court of ORS 105.210.

■ In support of his contention that the proof will not sustain a finding that the property could not be sold without great prejudice to the owners, counsel for

plaintiff, among other things, calls attention to plaintiff's motion to vacate the decree and a supporting affidavit in which it is averred on information and belief that, prior to April 30, 1954, Lloyd Corporation, Ltd., offered to pay the defendants $36,000 for the real property in question. Plaintiff urges that were the property to be sold at "public auction to the highest bidder," in accordance with the provisions of ORS 105.280, it would bring a higher price than $30,000, the value fixed by the court, and that it was the duty of the court to enter a decree under which the property would bring the highest possible price for the benefit of those persons lawfully entitled to the proceeds of the sale.

With the proposition last stated we are in entire agreement, but we are not convinced that the court's decree does not comply with this requirement.

The purchase price paid by the parties in 1946 was $9,000. The property is in the immediate neighborhood of the holdings of Lloyd Corporation, Ltd., which for a number of years has been engaged in real estate development in the area. In 1948 Lloyd offered $14,000 for the property. On the trial Mr. Franz B. Drinker, Portland manager for Lloyd, testified that their last offer was $30,000, but that in his opinion this was more than the market value because the property was worth more to the corporation than it would be on the open market. He thought that its market value was around $20,000. Whether the property would bring a higher price than its market value, if sold at public auction, is largely speculative. It is even more uncertain whether it would bring as much as $30,000. The plaintiff, in her complaint, it should be remembered, alleged the value to be $30,000. She has been awarded a decree which was conformable to her own estimate of value.

It is entirely possible that were the property to be sold at public auction she would receive less money than she will under the decree. At the opening of the trial her attorney informed the court that the defendants wished to speculate with the Lloyd Corporation, that the plaintiff did not want to speculate, that she wanted to sell, that the defendants thought that the Lloyd Corporation would probably pay more money for the property, and he thought that they would eventually, but "Mrs. Doan is an elderly lady and needs her money to live on, and she doesn't feel that she wants to speculate." So, the court's decree actually harmonized with the wishes of the plaintiff as expressed by her counsel at the beginning of the trial. It may also have been influenced to some extent by the fact that the defendants, with their children, live in the house and are able to make an income from it.

The case was tried by the late Judge Lowell Mundorff, whose untimely death put an end to what seemed destined to be a brilliant judicial career. Throughout the trial, and during the argument of counsel, he manifested a complete understanding of the evidence and all phases of the problem presented to him for solution. We think that the decree was fair and equitable and has ample support in the evidence. The decree is, therefore, affirmed without costs to any of the parties.