Submitted May 4, affirmed and remanded October 12, 1966

HAGGERTY ET AL *v.* NOBLES ET UX

419 P. 2d 9

Carl G. Helm, La Grande, for appellants.

Robert V. Chrisman, Enterprise, and Kottkamp & O'Rourke, Pendleton, for respondents.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin, Denecke, Holman and Lusk, Justices.

LUSK, J.

This is a suit for partition of farmland in Wallowa County and for an accounting as incidental thereto. The court, being of the opinion that the property could not be partitioned "without great prejudice to the owners," ORS 105.245, ordered its sale. The defendants Nobles have appealed from the interlocutory decree. They contend that there should be partition in kind and further challenge the accounting provisions of the decree and the assignment of dower to the plaintiff, Alice G. Nobles Haggerty.

The lands sought to be partitioned are a 680-acre tract and 360 acres of a 520-acre tract, all part of a 2,260-acre dry land grain and livestock farm. The main body of the farm comprises 1,740 acres and includes the 680-acre tract, of which approximately 320 acres are tillable and the remainder pasture. The 520-acre tract is all timbered pasture land.

All the ranch property was owned during his lifetime by Dale E. Nobles, deceased, either in fee simple or as tenant by the entirety with his wife. He died intestate on February 4, 1954. His surviving widow, the plaintiff Mrs. Haggerty, remarried. The interests of the three children in the lands in dispute, which had been owned by Dale E. Nobles in fee, were acquired by them by inheritance upon the death of their father. Title to the lands held by Nobles and his wife, as tenants by the entirety, passed, of course, to his widow upon his death.

The 680-acre tract is owned by the parties as tenants in common as follows: Plaintiff Alice G. Nobles Haggerty, an undivided five-eighths' interest; plaintiffs Marjorie Nobles McGraw and Billie Lee Nobles Warner, daughters of Mrs. Haggerty and Dale E.

Nobles, deceased, and defendant James B. Nobles, son of Mrs. Haggerty and Dale E. Nobles, deceased, each a one-eighth undivided interest. (The spouses of the respective parties are also made parties.) The 360 acres of timberland pasture are owned by the three children of Mrs. Haggerty as tenants in common, each having an undivided one-third interest.

A mortgage held by the defendant The Federal Land Bank of Spokane, Washington, was declared by the decree to be a first lien on the property. There is no controversy respecting the mortgage.

On the 680-acre tract are a dwelling and other farm buildings, a power line, and a well connected by pipeline with the dwelling.

During the lifetime of Dale E. Nobles, James B. Nobles and Vaden L. McGraw (husband of the plaintiff, Marjorie McGraw) operated the entire farm under a written lease from Dale E. Nobles. Under date of March 1, 1955, after Dale E. Nobles' death, his widow entered into a new written lease of the farm with her son and McGraw, to run until March 1, 1960. Before the expiration date of this lease the McGraw-Nobles partnership was dissolved and James Nobles continued to operate the ranch under the lease and was still operating it at the time of the trial. No written lease was entered into after the March 1, 1955, lease expired by its terms. There is a dispute as to the status of James Nobles after that time, that is, whether he, as he claims, was in possession under an oral year-to-year lease or was a hold over tenant. The court found that he was a hold over tenant and with that finding we agree.

■ We will consider first whether the order for sale

of the property should be sustained. ORS 105.245 provides:

> "If it is alleged in the complaint and established by evidence, or if it appears by the evidence to the satisfaction of the court without an allegation in the complaint, that the property or any part of it is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale of the property, and for that purpose may appoint one or more referees. Otherwise, upon the requisite proofs being made, it shall decree a partition according to the respective rights of the parties, as ascertained by the court. The court shall appoint three referees to partition the property and shall designate the portion to remain undivided for the owners whose interest remain unknown or not ascertained."

The established test of whether a partition in kind would result in great prejudice to the owners is "whether the value of the share of each in case of a partition would be materially less than his share of the money equivalent that could probably be obtained for the whole": *Idema v. Comstock,* 131 Wis 16, 18, 110 NW 786, 120 Am St Rep 1027; *Marshall & Ilsley Bank v. DeWolf,* 268 Wis 244, 248, 67 NW2d 380; *Williamson Investment Co. v. Williamson,* 96 Wash 529, 165 P 385. See, also, *Leavitt v. Benzing,* 97 NH 118, 82 A2d 86; Freeman, Cotenancy 718, § 542; 4 Thompson on Real Property, 1961 Replacement, 309, § 1828.

It has been said by this court in a partition case that "it is obnoxious to compel a person to sell his property": *Thompson Estate Co. v. Kamm,* 107 Or 61, 68, 213 P 417, 28 ALR 722. To the same effect see *Vesper v. Farnsworth,* 40 Wis 357, 362; *Williamson Investment Co. v. Williamson,* supra, 96 Wash at 535.

Nevertheless, it is a power that in an appropriate case, the court may, and is required, to exercise.

■ The testimony upon this question was largely confined to the effect of partition in kind upon the value of the 680-acre tract, and it seems to have been assumed by all parties that the disposition of the timbered pasture, which is much less valuable than the rest, should follow disposition of the 680 acres. Partition in kind of the latter would give to each of the children approximately 85 acres and the evidence is clear that a farm of that size in that part of Wallowa County would have small value because no one could make a living on it. As we view the case the real question is whether if, as the defendant James Nobles would have it, one parcel of 85 acres on which are located the dwelling and other farm buildings were set apart to him, the market value of the remaining (approximately) 600 acres would be materially diminished. That the court may, in a proper case, order a partial partition in kind and sale of the remainder we think there can be no doubt: ORS 105.205; 105.270; 105.310.① See, also, *Bennett v. Floyd*, 237 SC 64, 73,

---

① ORS 105.205: "When several persons hold real property as tenants in common, in which one or more of them have an estate of inheritance, or for life or years, or when several persons hold as tenants in common a vested remainder or reversion in any real property, any one or more of them may maintain a suit for the partition of the real property according to the respective rights of the persons interested therein, and for a sale of all or a part of the property if it appears that a partition cannot be had without great prejudice to the owner."

ORS 105.270: "If the referees report to the court that the property for which partition has been decreed, or any separate portion thereof, is so situated that a partition thereof cannot be made without great prejudice to the owners, and the court is satisfied that the report is correct, it may, by an order, direct the referees to sell the property or separate portion thereof so situated."

(Continued on page 435)

115 SE2d 659; *Swogger v. Taylor,* 243 Minn 458, 467, 68 NW2d. 376; *Hall v.. Hall,* 250 Ala 702, 35 S2d 681; 4 Powell on Real Property 631, § 612; 68 CJS. 199, Partition § 128.

■ In general, the evidence on behalf of the plaintiffs is to the effect that the market value of 600 acres sold separately and apart from 85 acres on which the buildings and well are located would be diminished by 20 to 25 per cent. The reason for this opinion, as given by the witnesses, is that the entire tract constitutes a farm unit and, as one witness, a rancher on adjoining land, testified: "You'd be taking the heart right out of the middle of that ranch by taking that 80 acres with the buildings." It is conceded that needed buildings might be constructed on the 600 acres by a purchaser. The evidence indicates, however, that because cattle and sheep in large numbers are an integral part of the ranch operation, it would be a practical necessity for someone to live on the land and that no one would put a dwelling on land unless it could be built close to a well. There is no developed well on the 600-acre tract and it is at least doubtful whether water, other than "stock water," could be found there and a well developed. This evidence came from people owning and operating ranches in the neighborhood and having intimate knowledge of the Nobles' property. There was some evidence to the contrary, but the judge, who must be credited with knowledge of local conditions, chose to accept the opinions of the witnesses for the plaintiffs and to find that the owners of the property would suffer "great prejudice" if the

(Continued from page 434)

ORS 105.310: "When only a part of the property is ordered to be sold, the whole of an estate for life or years in an undivided share of the property may be set off in any part of the property not ordered to be sold."

property should be partitioned other than by sale. From our painstaking examination of the testimony, we are unable to say that the judge was wrong in that conclusion.

The court decreed that the interests of the children of Mrs. Haggerty in the two tracts being partitioned was subject to her dower interest as the widow of Dale E. Nobles and that after the payment of attorney's fees, costs of reference and sale and other sums, an amount should "be set aside, in accordance with the provisions of law, representing the dower interest of the plaintiff, ALICE G. NOBLES HAGGERTY, to be invested according to law for the payment of the dower" to Mrs. Haggerty.

■ The defendants Nobles urge that this part of the decree is erroneous. They say, first, that no request for an assignment of dower is made in the pleadings. This is a highly technical contention. The complaint alleges that Mrs. Haggerty is the owner of a dower interest in the properties involved and prays that the court determine the respective rights and interests of the parties and asks for general relief. We think the pleading sufficient to advise the defendants that Mrs. Haggerty's right to the assignment of dower was in issue and to authorize the court to grant the relief sought if the evidence established her right to it.

■ The evidence indicates that Mrs. Haggerty and her children assumed that upon the death of her husband she became the owner of the entire estate and that the children had no interest therein whatever. It was evidently in that belief that Mrs. Haggerty and her son entered into the lease of the ranch and that no steps were taken to have her dower assigned to her. That she acquired that right upon her husband's death there can be no question: 1 Jaureguy and Love, Oregon

Probate Law and Practice 102, § 111. We may pass the question whether an assignment of dower was accomplished by her occupation of the premises with the consent of the heirs, as may occur under ORS 113.250.[2] She has not in this proceeding, of course, pursued any of the other statutory procedures "to convert this chose in action—dower consummate—into the actual enjoyment of the use and rents and profits of a portion of the deceased spouse's lands": 1 Jaureguy and Love, op. cit. 103, § 111; but she has asserted her claim in this partition proceeding—a suit in equity, *Brogoitti et ux v. Brown et ux,* 231 Or 309, 313, 372 P2d 773—and this court has held that a suit in equity may be an appropriate proceeding in which to procure an assignment of dower: *Baer v. Ballingall,* 37 Or 416, 422, 61 P 852. In that case we said that "it is now the general rule in the United States that courts of equity exercise concurrent jurisdiction with courts of law in admeasuring dower in legal estates (citing authorities)." A partition suit in which, by statute, "[t]he rights of the plaintiffs and defendants may be put in issue, tried and determined": ORS 105.240, would seem to be a peculiarly appropriate proceeding in which to make an assignment of dower when that question had not been otherwise determined. See 4 Powell on Real Property 628, § 611.

■ It is objected, however, that the statute of limitations has run against the claim. ORS 113.090 provides:

"No action or suit shall be brought after 10

---

[2] ORS 113.250: "When a widow is entitled to dower in the land of which her husband died seised, she may continue to occupy the same with the children or other heirs of the deceased, or may receive one-half part of the rents, issues and profits thereof, so long as the heirs or others interested do not object, without having the dower assigned."

years from the death of a decedent to recover or reduce to possession curtesy or dower by the surviving spouse of such decedent."

Dale E. Nobles died on February 4, 1954. The claim of dower of the plaintiff, Mrs. Haggerty, was first asserted in her complaint in this case which was filed April 25, 1963, well within the statutory period.

We think the court was right in assigning dower to Mrs. Haggerty.

As to the accounting, the defendants contend that the court erred in refusing to order an accounting between Mrs. Haggerty and her son; in attempting to determine matters between them on the basis of the evidence presented on the trial; and failing to determine all such matters.

■ Both sides, in their pleadings, asked for an accounting and much the larger part of the 593-page transcript of testimony is devoted to that phase of the case. Contrary to the claim of the defendants, the court did, in an elaborate decree, determine either expressly or by necessary implication every accounting issue presented, whether specifically pleaded or not, except several expressly reserved (some necessarily so) for determination upon the entry of the final decree. Where a particular claim of a party is not mentioned in the decree it is to be presumed that it was disallowed. On the trial the judge followed the testimony closely and his memorandum opinion and the decree evince meticulous care. Why, in these circumstances, the court should "order" an accounting or should not have determined the issues presented, is not clear to us.

■ These issues are numerous and, for the most part, factual. We find no adequate basis in the record

for disturbing the trial court's conclusions, nor any occasion to comment specially upon any of these matters, except the two following: The court refused to require Mrs. Haggerty to account for rentals paid her by the defendant Nobles under the lease. It is argued that since, at most, Mrs. Haggerty had only a dower interest in Noble's one-eighth interest, she was not entitled to rent from Nobles for the use and occupancy of his own property. There is a conclusive presumption that "[a] tenant is not permitted to deny the title of his landlord at the time of the commencement of the relation": ORS 41.350 (5). See *Kiernan v. Terry*, 26 Or 494, 500, 38 P 671. To sustain the defendants' contention would be to violate this principle.

The other question arises out of the following transaction. On April 3, 1952, Dale E. Nobles entered into a conditional sale contract for the sale of certain farm machinery to James B. Nobles and Vaden L. McGraw. At the time of the death of Dale E. Nobles a balance of $2,750 was owing upon this contract. The children all agreed that the balance should be paid to their mother and it was paid by James B. Nobles. Payment was completed in the Fall of 1954.

The defendants' amended answer demanded an accounting of the money so paid and the reply set up the six-year statute of limitations.

ORS 12.080 provides that an action upon a contract, express or implied, shall be commenced within six years after the cause of action accrued. While, as a general rule, statutes of limitation do not control suits in equity with the same strictness as they do in actions at law (*Mays v. Morrell*, 65 Or 558, 564, 132 P 714), they are adopted by analogy by courts of equity: *McIver v. Norman*, 187 Or 516, 545, 205 P2d

137, 213 P2d 144, 13 ALR2d 749; *Sedlak v. Sedlak,* 14 Or 540, 542, 13 P 452; *Anderson v. Baxter,* 4 Or 105, 111. In the *Anderson* case we said:

> "A Court of equity always would refuse relief where, under like circumstances, the claim would be barred at law by the Statute of Limitations; although the statute, in terms, should be applicable to Courts of law only. Equity, in such cases, acts by analogy to the rules of law. (Story's Equity Juris. § 64.)"

Here, the issue arises as incidental to a suit in equity and the claim is a legal one, that is, an action on an implied contract for money had and received. And where a court of equity takes jurisdiction of a legal cause of action because it is ancillary to a suit in equity, the applicable statute of limitations to the legal cause of action is as binding upon a court of equity as it would have been upon a court of law: *Tenth Ward Road Dist. No. 11 v. Texas & P. Ry. Co.,* 12 F2d 245, 248 (5th Cir.), 45 ALR 1513.

The cause of action under discussion accrued when the final payment was made in the Fall of 1954. The suit to recover the money was not commenced until the defendants' answer was filed on May 15, 1963, more than six years later. The claim is, therefore, barred, and the fact that the court's decree does not mention it is immaterial.

The interlocutory decree is affirmed and the cause is remanded for further proceedings. Costs on this appeal will be apportioned among the parties according to their respective interests in the lands divided: ORS 105.405 (2); *Reeder v. Reeder,* 68 Or 163, 170, 135 P 176, 137 P 191.