Argued and submitted Mary 14, reversed and remanded in part; otherwise affirmed on appeal and cross-appeal September 9, petition for review denied December 15, 1998 (328 Or 194)

Thomas W. MAUPIN
and Delta L. Maupin,
as Co-Trustees of the
Thomas W. and Delta L. Maupin Trust,
under trust agreement dated March 21, 1991,
and Thomas W. Maupin and Delta L. Maupin, individually,
*Respondents-Cross-Appellants,*

*v.*

Betty OPIE,
Walter D. Bailey and Janice K. Bailey,
*Appellants-Cross-Respondents.*

*and*

Norman F. MILLER
and Dee Ann Miller,
*Defendants.*

(96-03-11083-E; CA A97477)

964 P2d 1117

William F. Schroeder, Esq. argued the cause and filed the briefs for appellants- cross respondents.

Emil R. Berg argued the cause and filed the briefs for respondents-cross-appellants.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

### HASELTON, J.

In this partition action, arising out of an intra-family dispute over management and ownership of a ranch, defendants[1] appeal from a judgment ordering them to sell their interest in the subject property to plaintiffs. Defendants' principal contention is that the trial court should have either dismissed the partition action or, failing that, ordered a private sale permitting them to purchase plaintiffs' interest in the property. Plaintiffs cross-appeal, assigning error, *inter alia*, to the trial court's denial of some of their claims for contribution[2] and of their expenses allegedly related to partition. On *de novo* review, ORS 19.415(3); *Ferguson v. Ferris*, 130 Or App 443, 450, 882 P2d 1119 (1994), we conclude that the court erred in ordering a private, rather than a public, sale and in denying plaintiffs' claim for reimbursement of appraisal-related expenses.

The disputed property is the 6,000 acre Jenkins Ranch in Harney County. Plaintiff Delta Maupin and her three sisters, Dee Anne Miller and defendants Betty Opie and Janice Bailey, all grew up on the ranch. In 1929, the sisters' maternal grandparents, James and Adel Paul, first leased the ranch. In 1945, the Pauls and their daughter and son-in-law, Dorothy and Tom Jenkins, the sisters' parents, bought the ranch. In 1963, James Paul died, leaving his interest to Adel, who, in turn, sold the ranch to the Jenkinses.

Tom Jenkins died in 1976, and Dorothy in 1988. After Dorothy's death, Delta, Betty, and Dee Ann each owned a one-quarter interest in the ranch, and Janice's children owned the remaining one-quarter interest. In 1991, Delta deeded her one-quarter interest to the Tom and Delta

---

[1] "Defendants" in this opinion refers solely to appellants Betty Opie, Walter Bailey, and Janice K. Bailey. Norman and Dee Ann Miller are not parties to this appeal.

[2] In their pleadings, plaintiffs refer to these as claims for "accounting." However, "accounting" refers to a claim by one cotenant for a portion of profits and gains related to the property received by another cotenant. *See* 20 Am Jur 2d *Cotenancy and Joint Ownership* § 54 (1995). Plaintiffs, however, sought to receive money from defendants to compensate plaintiffs for arguably property-related expenses. Such claims are more usually referred to as "contribution" or reimbursement claims. *See Palmer v. Protka*, 257 Or 23, 31-32, 476 P2d 185 (1970). We refer to those claims of plaintiffs as claims for contribution.

Maupin Trust of which she and her husband are both the trustees and the beneficiaries. In 1992, Dee Ann also deeded her one-quarter interest to the Maupin Trust. Finally, in 1994 Janice's children deeded their one-quarter interest to their parents, Janice and Walter Bailey. Thus, when this action was filed in 1996, the Maupin Trust held a one-half interest in the ranch, and Betty and the Baileys each held a one-quarter interest.

Central to this dispute is the Maupins' relationship to, and management of, the ranch. Although Delta had grown up on the ranch, she, like her sisters, had moved away in her early twenties. In 1962, Delta and her husband, Tom Maupin, moved back to the ranch and began managing it, first as employees of Delta's grandmother, Adel Paul, and her parents, the Jenkinses, and later, beginning in 1972, as lessees of the Jenkinses.[3] After Dorothy Jenkins' death in 1988, the sisters agreed that the Maupins would continue to lease the ranch. In March 1990, the parties entered into a five-year lease agreement. Thereafter, in 1991, Betty, Dee Ann, and Janice's children assigned their interest in a related 28,000-acre grazing lease with the Division of State Lands to the Maupins individually. That assignment continues only so long as the Maupins lease the ranch.[4]

The Maupins raised their children on the ranch, and their son Jeff continues to live and work there. In 1991 or 1992, the Maupins purchased 160 acres near Crane, on which they installed an irrigation pivot and on which they raise hay to help feed the cattle on the Jenkins Ranch. Jeff also owns 160 acres near Crane adjacent to his parents' Crane land.

---

[3] From 1957 to 1961, Betty and her husband Don Opie had lived on, and managed, the Jenkins Ranch. When Don took a job managing another ranch, the Opies moved.

[4] The precise genesis of that lease is unclear from the record. It appears, however, that, at least as far back as 1972, a Federal Bureau of Land Management grazing preference was associated with Jenkins Ranch. Following some sort of land exchange between the state of Oregon and the federal government, the federal grazing preference was transmuted into a state lands lease. In 1985, Dorothy Jenkins entered into a 20-year lease with the Division of State Lands. That lease contains a single 20-year renewal clause. After Dorothy's death in 1988, the lease was transferred to the Maupins, Betty, Dee Ann, and Janice's children.

By 1994, the parties had begun to disagree about how the ranch should be managed and about how the costs of its upkeep should be divided.[5] Betty and the Baileys believed that the ranch was being mismanaged, decreasing its value and its ability to support cattle. The Maupins believed that any decrease in the ability of the ranch to support cattle was caused by climate changes and by the loss of a permit to harvest winter forage on the Malheur Wildlife Refuge. The parties could not agree on what should be done with the land. Eventually, some family members refused to speak to one another.

On March 4, 1996, the Maupins, individually and as trustees of the Maupin Trust, filed a complaint for partition of the Jenkins Ranch and the state lands lease, naming as defendants, Betty, the Baileys, and Dee Ann and her husband Norman,[6] asking the court to:

"A. Determine whether an equal and equitable partition of the Property can be made without great prejudice to the owners of the Property, and, if so, to recommend such partition to the Court; or

"B. If an equal and equitable partition of the Property cannot be made without great prejudice to the owners of the Property, then to arrange for the sale of the Property and a distribution of the proceeds in accordance with ORS 105.245 and 105.285, all in accordance with the respective interests of Plaintiffs and Defendants * * *."

Defendants answered, objecting both to partition in kind and to a public sale, asserting that either would result in "great prejudice." Defendants asserted that the trial court should, instead, compel plaintiffs, in a private sale, to sell their one-half interest to defendants for $210,000, less encumbrances, representing half the value of the property as determined by plaintiffs' appraiser.

---

[5] Betty, Dee Ann, and Janice lived within 60 miles of the ranch and, with their families, frequently visited the ranch.

[6] The complaint alleged that the Millers held a "mortgage on the plaintiffs' undivided interest in the property securing a note owed to them by plaintiffs." The Millers never appeared, and a judgment of dismissal was ultimately entered as to them.

Thereafter, plaintiffs filed an amended complaint which requested that, if neither a partition in kind nor a public sale could be made without prejudice to the owners, then the court should order defendants to sell, by private sale, their one-half interest in the property to plaintiffs. Plaintiffs also pleaded additional contribution claims and a claim for one-half of the "cost[ ] of partition." ORS 105.405(2).

On December 16, 1996, defendants filed their answer, reiterating that "great prejudice" would result from partition in kind or public sale:

> "The highest and best use of the Property is as a commercial livestock family operation, the fee and leased lands are mutually dependent in providing a base for such operation, and the whole may be an economic unit within the meaning of profitability of commercial family livestock operations, but a one quarter interest of defendant Betty Opie and a one quarter interest of defendant[s Walter and Janice Bailey] cannot constitute reasonable units by any measure.

> "Agricultural development of the Property cannot accommodate a partitioned or divided operation, and the agricultural lands cannot themselves be partitioned or divided without great financial prejudice to each of the * * * Defendants.

> "The Oregon State Lease cannot be divided without great financial prejudice to each of the * * * Defendants, if it can be divided at all. Lessor has not consented to any division and if a division is approved, it will be approved only if the lessees construct extensive fences at a cost to build and maintain which is not commensurate with the value of the grazing forage provided thereby given the prospects of continued occupancy.

> "The Property cannot be partitioned in kind without great prejudice, substantial adverse economic impact, to * * * Defendants. * * *

> "* * * * *

> "Defendants have never possessed the Property and plaintiffs have been in the possession thereof for many years. Plaintiffs deferred required repairs and maintenance of the Property to the end that its condition has progressively deteriorated and is now poor and cannot produce

what would otherwise be its fair market value in the event of a public sale.

"The structural development of the Property exceeds the nature and extent of the improvements necessary to sustain a commercial livestock operation of its size and will not be compensated by a public sale.

"The location of the Property is remote and isolated with aspects and improvements that will not appeal to a market of suburban, recreational, and retirement interests, and the remaining market layer of interest in commercial family livestock operations will be adversely affected by the current condition of the Property, the nature and extent of the structural improvement thereon, and the questionable tenure of the Oregon State grazing lease."

The case was tried to the court in February 1997. All parties agreed that partition in kind was not feasible and would result in "great prejudice" because, if partitioned, the resulting parcels could not support economically viable ranches. The opposing parties also agreed, albeit for very different reasons, that a private sale was greatly preferable to a public sale—but only so long as they were the purchasers, and not the sellers, in the forced sale. For example, plaintiffs contended that the land was more valuable to them than to anyone else because their cattle were already familiar with the land. In addition, plaintiffs asserted that their dependence on the ranch for their livelihood and their sentimental attachment to it as their home of many years supported a conclusion that they would suffer "great prejudice" in the absence of a private sale to them. Conversely, defendants reiterated their arguments, set out in their answer, as to why a public sale would not be fully compensatory. Defendants further contended that, under the partition statutes, only an owner who objects to the partition or public sale may purchase at the private sale. Defendants reasoned that, because plaintiffs initiated the partition proceeding, they could not be deemed an "objecting" party and, thus, only defendants could purchase.

The trial court found that the fair market value of the entire ranch was $515,000, as established in the report of

plaintiffs' appraiser, and that plaintiffs were entitled to purchase, by private sale, defendants' one-half interest in the ranch for $257,500:

"In practical terms, once the legal positioning is done, both parties want to force a private sale of the property to them. * * *

"* * * * *

"Great prejudice is established. It is appropriate that a private sale occur between the parties. *Fike* [*v. Sharer*, 280 Or 577, 581-82, 571 P2d 1252 (1977)]. Following the three step analysis in *Fike*, great prejudice is found on behalf of plaintiffs. The ranch has been their home continuously since 1962. They have raised their children there with all the attendant memories. Economically, they have developed an operation that is interdependent on these lands and additional hay producing lands owned separately. Their cattle are trained to the terrain (less significant but real) requiring less supervision. Finally, while I do not find that Maupins would have to sell their cattle if the ranch was sold to another, I do find that there would be significant costs in shipping and moving them to various properties.

"Defendants produced evidence claiming prejudice based upon poor husbandry and that to allow plaintiffs to purchase would in effect reward them. The evidence established a comparison between 1961 and 1996. Until 1988, defendants and plaintiffs had no ownership interest. That comparison is not valid for the purposes of this case. The facts were that there were many intervening events—all during the Jenkins' ownership, from the loss of the Mahon Dam to the refuge lease. These are the factors affecting the [cattle] capacity of the ranch. In addition, when the parties are negotiating and entering into leases, this is the kind of matter that is taken into account when setting the lease prices.

"* * * * *

"Finally, as to defendants, the price set for the sale does not prejudice them as it is set at fair market value. Much of their case was showing that the ranch was not worth the appraisal amount, but I accept the [appraisal amount]. The higher price greatly benefits defendants."

The trial court ordered that plaintiffs had 180 days to purchase defendants' interest. If plaintiffs did not timely exercise their right to purchase, the trial court ordered that defendants could purchase plaintiffs' interest for the same amount. The trial court denied plaintiffs' claims for contribution and costs of partition with the exception of ordering that defendants pay plaintiffs $2,087.50 for improvements to fencing.

Defendants appeal, challenging those aspects of the judgment that order a private sale to plaintiffs and require contribution for the fencing costs. Plaintiffs cross-appeal, challenging that part of the judgment that alternatively orders a private sale to defendants, and the denial of their other claims for contribution and for costs of partition.

Defendants raise seven assignments of error. For ease of analysis, we first address the fourth, fifth, and sixth assignments which, collectively, challenge the trial court's disposition ordering a private sale to plaintiffs.

■ In their fourth assignment of error, defendants argue that the trial court erred in failing to dismiss the partition complaint. Although defendants' argument is somewhat unclear, the gist of their position, as stated by defense counsel at trial, seems to be that partition was improper because the "best" resolution would be simply to leave the cotenancy in place:

> "We believe this complaint should be dismissed and that everybody should go home, and that the parties will thereafter have to and will make decisions themselves concerning continued occupancy of this ranch and under what terms they should exist. It is not the purpose of this court to create or fashion an agreement between these parties as to their future ownership."

The trial court correctly rejected that argument. Despite defense counsel's statement to the contrary, the "purpose," or role, of the court in partition actions is precisely to dissolve one form of ownership—cotenancy—and order another. Unilateral requests for dismissal by defendants in partition actions are inappropriate, because the right of cotenants to partition is absolute:

" 'Courts should be, and are, adverse to any rule which will compel unwilling persons to use their property in common. * * *' 20 [*Ruling Case Law*,] 716.

"* * * * *

" 'According to the weight of the authorities, every cotenant is entitled as a matter of right to demand a partition of the subject of the cotenancy, and this right cannot be defeated by showing that a partition would be inconvenient, injurious or even ruinous to the parties in interest.' "

*Michael v. Sphier*, 129 Or 413, 418, 272 P 902 (1929), *quoting Freeman on Cotenancy and Partition* § 433 (2d ed) (second quotation). *See also Hurst v. Hall*, 218 Or 113, 116, 574 P2d 311 (1978) ("[T]he purpose of the remedy of partition is to allow joint owners who cannot get along with each other to sever their relationship as joint owners."); *R.R. Thompson Estate Co. v. Kamm*, 107 Or 61, 65, 213 P 417 (1923) ("[A]ny tenant in common has the right to sue to break up that tenancy and take his part in severalty.").

The absolute nature of the right to partition is expressed in Oregon's partition statutes, particularly in ORS 105.245, which provides, in part:

"If it * * * appears by the evidence to the satisfaction of the court * * * that the property or any part of it is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale of the property * * *. *Otherwise* * * * it *shall* decree a partition according to the respective rights of the parties, as ascertained by the court." (Emphasis added.)

ORS 105.245 contemplates only two outcomes to a partition suit: partition in kind or sale. The trial court did not err in declining to dismiss the complaint.

■　　In their fifth and sixth assignments of error, defendants argue that the trial court did not correctly follow the "dispositional hierarchy" set forth in the partition statutes, and particularly in ORS 105.205, which provides, in part:

"When several persons hold real property as tenants in common * * * any one or more of them may maintain a suit for the partition of the real property according to the respective rights of the persons interested therein, and for a sale

of all or a part of the property if it appears that a partition cannot be had without great prejudice to the owner."

and in ORS 105.210, which provides, in part:

"If the court finds that the property can neither be partitioned nor sold without great prejudice to the owners, the court may receive evidence as to the value of the respective interests, fix the value thereof, and make an order permitting the owners, objecting to the partition or sale, to borrow money upon the property with which to pay off the claims * * * of the persons demanding a partition or sale. Upon payment of the amount in court * * * for the satisfaction of the claims of those demanding partition or sale, all right and interest in the property of the parties so demanding partition or sale is satisfied fully and the property is free and clear of all claims of any such parties."

As the Supreme Court explained in *Fike v. Sharer*, 280 Or 577, 580, 571 P2d 1252 (1977), those statutes "establish a hierarchy or dispositional alternatives where a party seeks partition." The court outlined the hierarchy as follows:

"[O]n a claim for partition, the statute provides these mutually exclusive remedies, in order of preference:

"1. *Partition* in kind, with cash adjustments where appropriate. ORS 105.205. *See also* ORS 105.250.

"2. *Public sale*, where partition cannot be had 'without great prejudice to the owner.' ORS 105.205.

"3. *Private sale*, where neither partition nor public sale can be had 'without great prejudice to the owners.' ORS 105.210."

Thus, if a court finds great prejudice from partition it may order public sale, ORS 105.245, and, if it finds great prejudice from public sale, it may order private sale. ORS 105.210.

Plaintiffs and defendants agree that partition in kind cannot be had in this case without great prejudice, and, like the trial court, we concur. *See* ORS 105.245 (court may not advance to second level of dispositional hierarchy unless great prejudice attendant to partition is established by the evidence). The "established test" to determine whether partition in kind would result in great prejudice to the owners is

" 'whether the value of the share of each in case of a partition would be materially less than his share of the money equivalent that could probably be obtained for the whole.' " *Fike,* 280 Or at 582, *quoting Hatterty v. Nobles,* 244 Or 428, 433, 419 P2d 912 (1966).

There is uncontroverted evidence that the property at issue is most valuable as a ranch and that, because of the large amounts of land required for ranching, dividing it into smaller parcels would mean that the total value of the divided parcels would be greatly diminished.

The fundamental disagreement between the parties centers around the type of sale that should be ordered and who can be, or should be, the purchaser at a sale. Defendants contend that the trial court should have ordered a private sale of plaintiffs' interest to them or, failing that, a public sale. Defendants argue, *inter alia,* that the partition statutes do not allow the party who brought the partition action to be the purchaser at a private sale, and, hence, the trial court erred in ordering defendants to sell their interests to plaintiffs. They point particularly to ORS 105.210, which provides that, if a court finds that property cannot be partitioned or sold without great prejudice, it may allow "the owners, *objecting to the partition or sale,* to borrow money upon the property with which to pay off the claims * * * *of the persons demanding a partition or sale."* (Emphasis added.) Thus, defendants assert, under the terms of ORS 105.210, only they, and not plaintiffs, could be the buyers in a private sale.

Plaintiffs disagree, arguing that ORS 105.210 should be construed to allow any party in a partition action, including the party who brings the action, to buy at a private sale if it can prove great prejudice from partition and public sale. Plaintiffs assert that such a construction is "sensible" because to preclude the party who brings the action from purchasing at the private sale would, as a practical matter, reduce the filing of the action to a sort of "Alphonse and Gaston" exercise: "After you." "No, after you." Plaintiffs contend that, given the state of the intra-family dispute among the cotenants, *someone* had to initiate this action, and they should not be prejudiced for having done so.

■     The proper construction of ORS 105.210 is, thus, conclusive. In construing that statute, we first examine the text of the statute in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). If the meaning of the statute is clear from that examination, the inquiry ends. *Id.* In construing a statute, we may not insert what has been omitted by the legislature or omit what has been inserted. ORS 174.010; *see, e.g., Fernandez v. Board of Parole*, 137 Or App 247, 252, 904 P2d 1071 (1995) (applying rule).

The text of ORS 105.210 is explicit: "[T]he court may * * * make an order permitting the owners, objecting to the partition or sale, to borrow money upon the property with which to pay off the claims * * * of the persons demanding a partition or sale." That text posits a dichotomy between "owners objecting to the partition or sale" and "persons demanding a partition or sale." The former may be purchasers, and the latter must be sellers, at the private sale. Plaintiffs, as the parties who filed the partition complaint—a complaint that prayed, in the alternative, for partition in kind or a sale of the property—were, necessarily, "persons demanding a partition or sale."

■■     Contextual reference to ORS 105.205 confirms that construction. In ORS 105.205, the legislature provided that "any one or more" of the tenants in common of a piece of property may "maintain a suit for the partition of the real property * * * and for a [public] sale" of the property, if partition cannot be had without great prejudice "to the owner."[7] ORS 105.205 does not provide for a complaint for partition that seeks private sale. If the legislature had intended to allow the party seeking partition to seek a private sale, it could have included that form of relief among those that can be sought in a complaint for partition. But it did not. Instead, the legislature made it clear in ORS 105.210 that a forced private sale is not among the remedies available to the party initiating a complaint for partition.

---

[7] Although ORS 105.205 provides for complaints for partition "and" public sale, partition in kind and public sale are, obviously, mutually exclusive forms of relief. ORS 105.205 thus presents a situation in which it is necessary to construe "and" to mean "or" to give effect to an "obvious intent." *See Kornbrodt v. Equitable Trust Co.*, 137 Or 386, 389, 2 P2d 236 (1931) (stating principle).

■     In a related sense, while ORS 105.205 provides that *any* cotenant may seek partition in kind or a public sale, ORS 105.210, in contrast, expressly narrows the universe of who can purchase at a private sale: "the owners, objecting to the partition or sale." The use of that more specific language in ORS 105.210 defeats plaintiffs' argument that any party may sell and any party may buy in a private sale.

We conclude that the "text in context" of ORS 105.210 is conclusive. We acknowledge plaintiffs' practical arguments—the partition scheme they urge may well be "sensible." But it is not the one that the legislature enacted. Plaintiffs, as the "persons demanding a partition or sale," cannot be purchasers, via a compelled private sale, of defendants' interests in the Jenkins Ranch. Consequently, the trial court erred in ordering a private sale to plaintiffs.

That does not, however, end the matter. Merely because plaintiffs could not be the purchasers at a private sale does not necessarily mean that the proper disposition is a private sale of plaintiffs' interest to defendants, rather than a public sale. In particular, a private sale would be appropriate only if the evidence demonstrates that a public sale would cause great prejudice to *defendants. See Hurst v. Hall*, 281 Or 113, 117, 574 P2d 311 (1978) (the defendants could not prevent a partition in kind by showing that the plaintiffs would be prejudiced thereby).

■     The duty of the court, when deciding between a private and a public sale, is to order the type of sale "under which the property would bring the highest possible price for the benefit of those persons lawfully entitled to the proceeds on the sale."[8] *Doan v. Doan*, 208 Or 508, 512, 302 P2d 565 (1956). In *Fike*, the Supreme Court characterized that determination as the "financial prejudice test" and indicated that the issue is whether the value of each party's share in case of a public sale would be materially less than each party's share

---

[8] In addition, we *may*, but are not required to, consider "sentimental reasons, [such as] an owner's desire to preserve a home" in our determination of whether a public sale would cause great prejudice. *Fike*, 280 Or at 582-83. We decline to do so in this case, however, because, although defendants have some sentimental attachment to the Jenkins Ranch, plaintiffs' attachment to their home of over 35 years is clearly greater.

in case of a private sale. *Fike,* 280 Or at 582. Consequently, under the "financial prejudice test," we may order a private sale to defendants only if the record reflects that defendants would be willing to pay materially more in a private sale than would an arm's-length buyer in the open market. *Cf. Doan,* 208 Or at 510 (great prejudice is a question of evidence, not of pleadings).

■        The record is devoid of any such evidence. There is no evidence that defendants are situated in such a way that the property would have more pecuniary value to them than it would have to an arm's-length buyer. Defendants did present evidence in support of their contention that the ranch can now support fewer cattle than in the past, that that decreases the value of the ranch, and that the change was due to poor management by the plaintiffs. We express no opinion on that evidence, because it is immaterial to the question at hand: Is the property worth more to defendants than to an arm's-length buyer? Defendants do not explain, and we do not perceive, why any decreased value of the ranch would affect the answer to that question; if true, it would simply mean that *any* buyer, whether defendants or not, would be willing to pay less for the ranch.

We thus conclude that, given the absence of "great prejudice" resulting from a public sale, a private sale of plaintiffs' interest to defendants is unwarranted. The proper disposition is a public sale of the ranch pursuant to ORS 105.205.[9]

We have considered defendants' remaining assignments of error and reject them without further discussion.

We turn to plaintiffs' cross-appeal, which raises four assignments of error. In their first assignment of error, plaintiffs contend that the trial court erred in ordering a private sale to defendants as an alternative to a private sale to plaintiffs. As we explained above, 156 Or App at 66-67, the proper disposition in this case is a public sale. Thus, the judgment is

---

[9] Our disposition in that regard obviates consideration of defendants' first assignment of error, which disputed the Maupins' "standing" to purchase at a private sale, and defendants' third assignment of error, which asserted that plaintiffs had failed to sufficiently demonstrate prejudice in the event of a public sale.

reversed insofar as it orders a private sale to either plaintiffs or defendants.

Plaintiffs' second, third, and fourth assignments of error all raise issues pertaining to claims for contribution or reimbursement for certain expenses. We have considered the second and third assignments and reject those without further discussion.

■ In their fourth assignment of error, plaintiffs contend that the trial court erred in denying their claim for reimbursement of half of the expense of the appraisal of the ranch generated by plaintiffs' expert. Defendants respond that, because the appraiser was hired by plaintiffs acting alone, they should not be required to help pay for the appraisal.

ORS 105.405(2) provides, in part:

> "The reasonable costs of partition * * * that are for services performed for the common benefit of all parties, shall be paid by the parties decreed to share in the lands divided in proportion to their respective interests therein, and shall be included and specified in the decree."

Only one appraiser was employed in this case. Defendants relied on the appraisal in their answer to the complaint when they offered to pay one-half the appraised amount in a private sale to them. Furthermore, defendants cite analysis from the appraisal to support arguments in their brief on appeal. We conclude that the appraisal was a "reasonable cost of partition" and that defendants should bear half its cost.

On appeal, judgment ordering private sale of defendants' cotenancy interests to plaintiffs reversed and remanded with directions to order public sale of entire property; otherwise affirmed. On cross-appeal, judgment ordering, in alternative, private sale of plaintiffs' cotenancy interest to defendants reversed and remanded with directions to order public sale of entire property; judgment for defendants on plaintiffs' claim for reimbursement for one-half of appraisal expenses reversed and remanded for entry of judgment for plaintiffs; otherwise affirmed.