Argued at Pendleton May 1, modified September 26, 1922.

## CURREY ET AL. *v.* SMITH.

(209 Pac. 232.)

**Tenancy in Common—Son Held Charged With Constructive Notice of Father's Deed of Undivided Interest Under Which Mother Took Exclusive Possession.**

1.   Where a man conveyed an undivided interest in land to his wife, who after his death took exclusive possession of the land, an adopted son, living in the vicinity, and who could not have been ignorant of her acts of ownership, *held* charged with constructive notice that the deed conveyed only an interest in the land, and that she was in hostile possession of the rest.

**Tenancy in Common—Statute not Prevented from Running Because of Ignorance of Interest.**

2.   Where a man conveyed an undivided interest in land to his wife, who after his death took exclusive possession of the land, the fact that an adopted son acquiesced in her use of the property because he had been informed that the whole property had been conveyed to her did not prevent the statute of limitations from running.

**Tenancy in Common—Acts of Dominion Sufficient to Bring Notice Home to Cotenant Sufficient to Constitute Adverse Possession.**

3.   While acts of dominion over premises must, in order to initiate adverse possession as against a cotenant, be of a more unequivocal character than against an owner not standing in such relation, the only reason for the requirement is that the claim of adverse possession must be brought home to the cotenant in order to work an ouster.

**Tenancy in Common—No Ouster When Will was Equivocal as to Whether Testator Recognized Another's Interest in Land.**

4. Where a man conveyed an undivided interest in land to his wife, who after his death took exclusive possession, her will devising the land to a daughter and daughter-in-law, and stating that the daughter's interest was $500 in accordance with the wish of her deceased husband, was equivocal as to whether she recognized an interest of the daughter in the land, and there was no ouster as to the daughter.

**Tenancy in Common—That Executor Inventoried Property and Petitioned for Sale Held not Ouster of One Owning Undivided Interest With the Testator.**

5. Where a man conveyed an undivided interest in land to his wife, the fact that the wife's executor had the tract inventoried as her property and petitioned for its sale as such did not operate to oust a daughter.

**Tenancy in Common—One Standing by and Permitting Purchaser to Make Improvements Held Barred by Laches from Claiming Interest.**

6. Where a man conveyed an undivided interest in land to his wife, who after his death took exclusive possession and whose executor sold the land as property of the estate, an adopted son, who knew the facts, but stood by and permitted the purchaser to make valuable improvements, and for eight years never apprised the purchaser of his claim to an interest in the property, was barred by laches.

**Tenancy in Common—One Barred by Laches by Standing by and Permitting Improvements not Precluded from Purchasing Interest of Another not so Barred.**

7. That cotenant with knowledge of the facts permitted a purchaser of property to make valuable improvements without ever asserting a claim to an interest in the property did not preclude him from purchasing the interest of another, who was not so barred, and asserting it in the courts.

**Tenancy in Common—Rents and Profits not Recoverable When Taxes Paid and Improvements Permitted Constituted Fair Recompense.**

8. One recovering an undivided interest in land is not entitled to damages for rents and profits where he stood by and allowed the party in possession to pay taxes and make improvements under the mistaken belief that he was owner of the whole, constituting a fair recompense for any profits made.

From Baker: DALTON BIGGS, Judge.

In Banc.

This litigation began in 1906 when defendant Smith commenced an action of ejectment to recover posses-

sion of a half interest in 200 acres of land situated in Baker County, Oregon, claiming to own the same, one fourth in his own right as heir of Thomas Smith, deceased, and the other fourth through the heirs of Betty Crabtree, a daughter of Thomas Smith, who resided in England.

Plaintiffs filed a cross-bill in January, 1907, on the equity side of the court, seeking to enjoin the action at law and asserting title in themselves to the demanded premises both by actual mesne conveyances and by adverse possession. After various delays and dilatory pleas, an amended cross-bill, which we shall hereafter designate as a complaint, was filed July 19, 1918, and the case was put at issue by an appropriate answer and reply, after which a hearing was had and a decree rendered for plaintiffs, from which the defendant appeals.          MODIFIED.

For appellant there was a brief over the names of *Mr. A. A. Smith* and *Mr. Joseph J. Heilner,* with an oral argument by *Mr. Smith.*

For respondents there was a brief over the names of *Messrs. Nichols & Hallock* and *Mr. George E. Allen,* with an oral argument by *Mr. James H. Nichols.*

McBRIDE, J.—The facts either admitted or substantially proved are these: In 1893 Thomas Smith, of whom the defendant was an adopted son, was the owner of about 200 acres of land situated in Baker County, and on March 11th of that year he conveyed to his wife, Tamar F. Smith, an undivided interest in the tract, which deed was recorded January 24,

1894, after the death of Thomas Smith, which occurred in December, 1893.

C. A. E. Smith was appointed administrator of the estate of Thomas and filed an inventory in which no mention was made of any interest in the disputed premises. Tamar F. Smith assumed possession of the property, which at that time was almost entirely uninclosed but had upon it a dwelling-house and yard and probably a garden and orchard of small proportions. She dealt with the property as her own, paid all the taxes upon it and sold the timber on a portion of it, appropriating the proceeds, without any remonstrance from W. L. Smith, who resided in Baker County a few miles distant and who admits that at that time he supposed his adopted father had conveyed to her the whole tract.

Betty Crabtree resided in England and there is no testimony to indicate that at the death of Thomas Smith or for several years thereafter while his estate was in process of administration she had any actual notice or knowledge that her father had any interest in the tract at the time of his death. After her death, her heirs conveyed their interest to the defendant by a deed purporting to transfer a half interest in the entire tract.

Thomas Smith was the original owner of the tract in controversy and in 1893 conveyed an undivided one-half interest therein to his wife, who after his death took possession of the improved portions of the tract, including the house, and exercised such dominion over it as the circumstances permitted, apparently without consulting W. L. Smith or Betty Crabtree, who by law were her tenants in common. So far as appears, there were no considerable profits from the land, perhaps little more than enough, if

indeed enough, to pay taxes. Tamar F. Smith sold timber from the land amounting in value to $125 and converted the proceeds to her own use. As the deed from her husband to her was not recorded until after his death, it is probable that it was recorded at her instance. At least she must have had constructive notice of its contents.

1, 2. There was a mortgage upon the tract for between $700 and $800 executed by her and her husband, whether for the debt of her husband or herself does not appear. W. L. Smith, who lived in the vicinity, was charged with constructive notice of the deed and could not in reason have been ignorant of her notorious acts of ownership which included the impairment of the very *corpus* of the estate itself by cutting and selling the timber, which, granting that he had such knowledge, would amount to an ouster so far as he was concerned. He says that he acquiesced in the use she made of the property because he had been informed that Thomas Smith had conveyed the whole property to her, but even if he had been so misinformed, this would not prevent the statute from running.

3. Adverse possession is not, as a general rule, barred by ignorance of the real owner of his rights in the premises. Although it is true that acts of dominion over the premises must, in order to initiate an adverse possession as against a cotenant, be of a more unequivocal character than against an owner not standing in that relation, yet the only reason for this requirement is the fact that the claim of adverse possession must be brought home to the cotenant in order to work an ouster. And we have no doubt that so far as W. L. Smith was concerned he knew that his mother was claiming the entire tract, and that

either through lack of diligence or in the belief that
the estate was likely to be swallowed up in debts
he did not assert any claim until after both estates
had been settled and the purchaser of the tract had
made extensive and valuable improvements upon it.
That Tamar Smith claimed and intended to claim the
whole tract is indicated by her will, which was exe-
cuted in February, 1895, and probated October 6,
1895, wherein after certain devises and bequests to
Jennie E. Smith, her niece by marriage, and a small
bequest of personal property to the defendant W. L.
Smith, occurs this language:

"And the said Jennie E. Smith shall have and hold
the said above described property, real and personal,
and the whole thereof, from any and all calls and
demands of my creditors or for the payment of any
debts, dues or obligations which I may owe at the
time of my death, and the said debts, dues and obli-
gations shall be paid out of my other property here-
inafter mentioned, provided there be enough thereof
to make payment of said debts, dues and obligations
in full.

"I also give and bequeath unto Mollie Smith, wife
of my adopted son William L. Smith, heretofore
mentioned, and unto Betty Crabtree of England all
the following described property situated in Baker
County, Oregon, to wit: S. $\frac{1}{2}$ of NW. $\frac{1}{4}$ and NW. $\frac{1}{4}$
of SW. $\frac{1}{4}$ of Sec. 23 and SE. $\frac{1}{4}$ of NE. $\frac{1}{4}$ of Sec.
22 Tp. 10 S. R. 38 E. W. M. containing 160 acres and
all my interest in and to the SW. $\frac{1}{4}$ of NE. $\frac{1}{4}$ of
Sec. 23, same town and range, containing 40 acres.
The interest of said Betty Crabtree in and to the
property constituting the above described two hun-
dred acres shall be $500 in accordance with the wish
of my deceased husband. I also give and bequeath
unto the said Mollie Smith and Betty Crabtree the
following described property situated as aforesaid
to wit: The NE. $\frac{1}{4}$ of the SE. $\frac{1}{4}$ of Sec. 23, Tp. 10 S.

R. 38 E. W. M. and this property shall also be subject to the allowance of $500 unto said Betty Crabtree, as above set forth.''

4. Stress is laid by the plaintiffs upon the word ''all'' occurring in the devise of the 160 acres. The whole tract comprised 200 acres, the subdivision last described being also a part of the same premises, so that while the suggestion is made that by using the word ''all'' the testatrix intended to assert title, its force is weakened by the fact that the word ''all'' is not used in describing a portion of it. It seems quite as probable that the use of this word was the act of the scrivener as the conscious expression of complete title by the testatrix. It is evident, however, taking the will by its four corners, that the testatrix considered herself the owner of the whole tract except perhaps an interest to the extent of $500 in Betty Crabtree. The will is equivocal in this respect, and whether the testatrix had in mind the carrying out of a mere request of her husband or intended to recognize an interest of Betty Crabtree to the extent of $500 in the property pursuant to some undisclosed and unproved arrangement between herself and her deceased husband is problematical. At least the language used is not such as conclusively to indicate an ouster as to Betty Crabtree, who resided in England and probably had no exact knowledge of the condition of her father's property in Baker County or even that he possessed any land there.

5, 6. The fact that the executor had the tract inventoried as the property of the estate and petitioned for the sale of it as such could not operate of itself as an ouster as to Betty Crabtree, as she was not required to appear in the County Court and contest the title of the executor, because that court had no

jurisdiction to pass upon the validity of the title, nor is it probable that a citation published in a Baker County newspaper ever came to her notice in London, England, so as to permit the imputation of laches to be urged against her or her heirs by reason of her not making her claim at an earlier date. As respects her and her heirs, the case is far different from the claim of W. L. Smith, who was in a position to know, and no doubt did know the facts, and so knowing, stood by and permitted L. P. Currey to purchase the property as a whole, saw him make valuable improvements, and with this knowledge, for eight years never apprised Currey that he had or claimed to have an interest in the property. His laches in this regard, irrespective of the question as to adverse possession, ought to preclude him from asserting title to the portion he inherited from his adopted father.

7. But, culpable as he was in this respect, he had a right to purchase the interest of Betty Crabtree and to assert it in the courts. Her right to an undivided one fourth in the property was perfect and her heirs could transfer it to anyone who would buy, and as to that interest we do not believe Smith is barred from recovery by his laches as to his own interest. He should be decreed to be the owner of a one-fourth interest in the tract and no more, and Dr. Currey's title as to the remaining three fourths should be quieted.

8. We are of the opinion that Smith is not entitled to damages for rents and profits. He stood by and allowed Dr. Currey to pay the taxes for all those years, to ditch and irrigate the land, to build two miles of fencing, and otherwise to improve the property under a mistaken belief that he was the owner, and such improvements ought to be a fair recom-

pense for any meager profits that the plaintiffs received from rent.

The decree will therefore be as above indicated. The action in ejectment will be forever stayed. Defendant will recover his costs on this appeal, but neither party shall recover costs in the Circuit Court.

MODIFIED.