Argued October 7, 1969, affirmed February 18, 1970

# FOSS ET UX, *Respondents, v.* PAULSON ET UX, *Appellants.*

465 P. 2d 221

*Fred Allen,* Newport, argued the cause and filed a brief for appellant.

*Dan W. Poling,* Newport, argued the cause and filed a brief for respondent.

Before Perry, Chief Justice, and McAllister, Sloan, O'Connell, Goodwin,* Denecke and Holman, Justices.

McALLISTER, J.

This is a suit to determine adverse claims to a tract of real property involving the question of adverse possession as between tenants in common. ORS 105.605.

This controversy arose from the following circumstances. On June 30, 1948, Lester Foss owned the five-acre tract in Lincoln County which is the subject matter of this suit and was living thereon with his then wife, the defendant Dolores June Paulson. On that date a deed, executed by Lester Foss, was recorded in Lincoln County creating in him and his wife Dolores an estate by the entirety.

On February 11, 1952, Lester Foss and Dolores were divorced in Lincoln County by a decree which did not adjudicate their property rights.

On May 1, 1954, Lester Foss died intestate, leaving as his only heir-at-law Roy Foss, his son by a former marriage, who is the plaintiff in this suit.

It is admitted in the pleadings that the plaintiff Roy Foss and his former stepmother, the defendant Dolores Paulson, each own of record, as tenants in common, an undivided one-half interest in the property. Roy alleged in his reply, however, that he acquired Dolores' record one-half interest in the property by adverse possession, which claim was denied by Dolores. The trial court found for plaintiffs and defendants appeal.

* Goodwin, J., resigned December 19, 1969.

After her divorce from Lester in 1952, Dolores continued to live on the property with him until his death in 1954. After Lester's death and before his estate was closed, Dolores moved from the property, taking most of her personal property with her. Although there is some conflict in the evidence as to when Dolores left the property, it appears she moved more than 10 years before this suit was filed.

■ The evidence concerning Dolores' departure from the property is also conflicting. The administrator of Lester's estate, Victor Bump, testified that he asked Dolores to leave, watched her move her possessions out, and then padlocked the door. He further testified that when he learned that someone had entered the house through a window and removed some additional personal property he told Dolores to stay out of the property.

The conduct of Bump, the administrator, in requesting Dolores to vacate the property at a time when she owned of record a one-half interest in the property is explained by the following circumstances. The attorney who represented Bump as administrator in probating Lester's estate also represented Lester when he obtained a divorce from Dolores. The attorney testified that prior to the divorce he prepared and gave to Lester a quitclaim deed to be executed by Dolores quitclaiming all her interest in the real property to Lester; that prior to the entry of the decree of divorce Lester showed him the deed, apparently executed by Dolores, and that he told Lester to record the deed as soon as the decree had been entered. The attorney testified that the decree of divorce did not adjudicate any property rights because of the quitclaim deed executed by Dolores. The quitclaim deed

about which the attorney testified was never recorded and was not produced at the trial.

When the attorney was retained to probate the estate he assumed that Lester at the time of his death was the sole owner of the real property and the estate was probated on that assumption. The inventory, the final account, and the final decree listed the realty as Lester's sole property and Roy Foss as his sole heir.

The administrator, in turn, also assumed that Lester had been the sole owner of the property, and that it had become the sole property of Roy Foss as Lester's sole heir. Bump testified that as administrator he was representing the heir, Roy Foss, in demanding and supervising the vacating of the property by Dolores.

Dolores' version of her leaving the property differed. She testified that Bump told her that Roy Foss was coming to live on the property and that she moved because she did not want to live there with Roy. She further testified that she left various items of personal property in the house because she expected to come back to it. She admitted, as a witness, however, that she had removed one load of personal property from the house, but that when she returned for the rest she found the house padlocked. She further testified that after she moved from the property she made several trips a year to the property to inspect it, at which times she went onto the premises, but never into the house and that no one was present during her visits to the property.

We deem it unnecessary to recite in detail all the evidence bearing on the claim of adverse possession. We have recited the evidence of ouster, which we think was sufficient to put a cotenant on notice that Roy's

possession was adverse. See *Richards v. Page Invest-ment Co.*, 112 Or 507, 523, 228 P 937 (1924); *Currey et al v. Smith*, 105 Or .82, 86, 209 P 232 (1922). The evidence also establishes to our satisfaction that after he moved onto the property Roy continued to occupy the property to the exclusion of the defendants until this suit was filed. For about seven years Roy lived on the property with his first wife, Diane, and their children. Roy and Diane were divorced early in 1964 and shortly thereafter Roy arranged with a friend and former brother-in-law, Mike Kasper, to live on the property and take care of it. The arrangement was informal. Kasper paid little or no rent and had an indefinite understanding that when the title was cleared he might buy a part of the property from Roy. Kasper was still living on the property at the time of trial.

■ Dolores' conduct for more than 10 years was entirely inconsistent with that of a person who owned a one-half interest in a tract of land occupied by a cotenant. Her conduct was consistent with that of one who, some years earlier, at the time of her divorce, had quitclaimed all of her interest in the property to her husband. Although Dolores claimed that she returned to the property from time to time to inspect it, she admitted that for more than 10 years she did not assert any claim to the property and did not at any time challenge Roy's right to the exclusive possession of the property.

Plaintiffs' claim of adverse possession is established by the evidence. We agree with the findings of the trial judge and affirm his decree.