Argued and submitted October 27, 2010, affirmed March 9,
petition for review denied September 15, 2011 (350 Or 716)

Freidrich BERGER
and Erika Berger,
husband and wife,
*Plaintiffs-Respondents,*

*v.*

Rudiger STEPHAN,
aka Stephan Ruediger;
and Kristine Berger Benks,
aka Berger Kristine Binks,
aka Kristine Berger-Benks,
*Defendants-Appellants,*

*and*

Tanya BERGER-CAUDLE,
*Defendant.*

Crook County Circuit Court
05CV0036; A141558

250 P3d 954

Michael W. Peterkin argued the cause for appellants. With him on the briefs was Peterkin & Associates.

Nancy A. Borneman argued the cause for respondents. On the brief were Gary D. Rossi and Dutli & Borneman, LLP.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Nakamoto, Judge.*

NAKAMOTO, J.

---

\* Nakamoto, J., *vice* Landau, J. pro tempore.

## NAKAMOTO, J.

This is a dispute among family members concerning their respective claims to the proceeds of the sale of a ranch in Crook County, Oregon. The parties to the dispute, plaintiffs Freidrich and Erika Berger,[1] along with the two primary defendants, their daughter Kristine Berger Benks and her domestic partner, Rudiger Stephan, have held the property as tenants in common in a life estate, with cross-contingent remainders in fee simple.[2] Freidrich and Erika[3] sought a partition or sale of the property pursuant to ORS 105.205.[4] They also sought the recovery of funds from Kristine for loans and logging revenues. Although acknowledging that Kristine and Rudiger had an ownership interest in the ranch, plaintiffs alleged they had made the primary investment in the property through its purchase. Kristine and Rudiger alleged that they had paid the entire purchase price for the ranch from their own funds and that Kristine's parents had paid none of it.

Before trial, the parties agreed that the property could not be partitioned and asked the trial court to determine how much of the proceeds of the sale of the ranch should be distributed to each party. After a trial based in part on stipulated facts, the trial court determined that plaintiffs Freidrich and Erika have a 75 percent interest in the ranch property and defendants Kristine and Rudiger have a 25 percent interest. The court ordered the ranch sold and the proceeds divided accordingly, resolving all other claims through

---

[1] Plaintiff Freidrich Berger is now deceased.

[2] Defendant Tanya Berger Caudle, who is not a party to this appeal, has a judgment lien on the property, and the parties agree that her interest will be satisfied out of plaintiffs' share of the sale proceeds, if any, and that, if there are no proceeds, plaintiffs will pay Caudle.

[3] For the sake of clarity, throughout this opinion, we use the parties' first names.

[4] ORS 105.205 provides:

"When several persons hold real property as tenants in common, in which one or more of them have an estate of inheritance, or for life or years, or when several persons hold as tenants in common a vested remainder or reversion in any real property, any one or more of them may maintain a suit for the partition of the real property according to the respective rights of the persons interested therein, and for a sale of all or a part of the property if it appears that a partition cannot be had without great prejudice to the owner."

that disposition. Kristine and Rudiger appeal, arguing, *inter alia*, that the trial court erred in admitting evidence of an alleged prior oral agreement bearing on the parties' contributions towards the initial purchase of the ranch and their intentions with respect to their ownership interests in the ranch. On *de novo* review,[5] *McMillan v. Follansbee*, 194 Or App 145, 148, 93 P3d 809 (2004) (partition is an equitable remedy and review is *de novo*), we affirm.

We summarize the parties' stipulated facts, along with additional facts that we find on our *de novo* review of the trial record. Where pertinent, we note disputes in the evidence. The parties are German nationals and live in Germany. Defendant Kristine testified that in the 1980s, the family had a dream of moving to Oregon. To realize that dream, Kristine testified, "we had to find ways of earning money." Kristine testified that the parties devised a plan to purchase property that could be developed as a vacation destination for German tourists interested in horseback riding.

Plaintiff Erika testified that she and Freidrich decided to buy property in the United States "first of all to have a base" for their children, "then at the same time [as] an investment for everybody." She testified that she and Freidrich wanted everyone in the family to have an interest for eventual inheritance purposes. Plaintiff Freidrich testified that, in buying the property, he had no intention of moving there. He testified, "I heard that Kristine and Gerhard had the intention of setting up a riding operation, and I wanted them to have that available." He also said that it was his intention that the property would ultimately become a part of his estate and his children's inheritance.

The parties' business plan contemplated that plaintiffs' son, Gerhard Berger, would operate the trail riding portion of the business and that Kristine would handle marketing and advertising from Germany. For several years,

---

[5] The legislature recently amended ORS 19.415, which governs our standard of review in this case. *See* Or Laws 2009, ch 231, §§ 2-3. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal in this case was filed before that date, the amendments do not apply.

Kristine, her domestic partner Rudiger, and Gerhard travelled to the United States in search of property, and, in late 1990, they located a suitable ranch property of approximately 495 acres with a cabin, near Prineville, Oregon, that was available for $246,000. In anticipation of the purchase of the ranch, Gerhard moved to Oregon.

The following evidence was received at trial over an objection by defendants that will be explained below. Plaintiffs Erika and Freidrich testified that they owned a second, rental house in Iggelbach, Germany, which Erika had received as a gift from her mother. Plaintiffs produced evidence that they had sold the Iggelbach house to a third party for 350,000 deutsche marks (DM 350,000), but that that sale fell through. When Kristine heard the sale had fallen through, she suggested that Rudiger could purchase the house for the same price. On December 28, 1990, the parties agreed that Rudiger would purchase the Iggelbach house for DM 350,000. Freidrich testified that he had wanted Rudiger to apply amounts owed for purchase of the Iggelbach house to the purchase of the Oregon ranch:

> "Kristine told me that he wanted to—that Rudiger wanted to buy it for the same price, and I was agreeable, and I told her, 'take the money, take Rudiger's money and take it to the U.S. so that Gerhard can use it to purchase the property,' and she responded that she—in her words, 'I will take care of this immediately.'"

Freidrich testified that he had directed Kristine to ask Rudiger to transfer funds of approximately $243,000, the equivalent of DM 320,000, from Rudiger's accounts in Germany to accounts in the United States in Gerhard's name for the purchase of the ranch, and that she did so. On June 14, 1991, Gerhard applied the transferred funds to the purchase of the ranch property for $246,000.

Eleven days before the Oregon transaction, on June 3, 1991, plaintiffs and defendants had executed a written, notarized agreement for the sale of the Iggelbach house to Rudiger and Kristine (the Iggelbach contract), and plaintiffs transferred the Iggelbach house to defendants. The written contract stated a purchase price of only DM 49,500.

Over defendants' objection, Freidrich testified that he believed that Rudiger requested the stated purchase price of DM 49,500 so Rudiger could avoid paying taxes on the property's increased value. Freidrich further explained that DM 49,500 was more than Rudiger and Kristine actually owed to plaintiffs on the property at the time of the closing on the Iggelbach house, in light of the previous advance of DM 320,000 for purchase of the ranch, and that Rudiger asked for the difference, DM 19,500, in cash.

The title to the ranch property was initially taken by Gerhard and Kristine; later, title was amended to include plaintiffs as well as Rudiger.[6] Freidrich testified that the parties had agreed that Kristine would pay rent to plaintiffs for the business's use of the Oregon ranch. Freidrich paid the taxes on the property, with the exception of one year in which Kristine paid the taxes as her rent. Plaintiffs paid for some improvements, including the addition of a well and septic system and replacement of a roof. Kristine and Rudiger also made some improvements to the property, spending between $10,000 and $20,000 of their own funds.

Less than two years after the purchase of the ranch, in late 1992, the trail riding business failed. The parties testified concerning their ongoing dispute over ownership of the ranch and an unsuccessful settlement attempt in 1994. The proposed settlement included the sale of a portion of the ranch, with the proceeds, up to DM 320,000, to be paid to Kristine. Kristine, in turn, would give up her interest in the property. According to Kristine, the remainder of the ranch that would not be sold was worth about $1,000,000. Freidrich testified that Kristine had chronic money problems and frequently came to him for financial assistance, and that he had supported her and given her gifts of assets valued at over DM 400,000. Freidrich testified that he had agreed to the proposed settlement because Kristine was desperate for funds, not because he believed payment under it represented Kristine's interest in the property. He also thought it would end the family dispute. Kristine testified that she viewed the proposed settlement as a return of her initial investment in

---

[6] Gerhard transferred his interests in the ranch to other family members, and does not claim an interest in the property or the proceeds of sale.

the property, but that the payment would not cover her entire interest in the ranch. For various reasons, though, the proposed settlement was never fully executed, and in 2004, plaintiffs filed this lawsuit to resolve the dispute.

By a motion *in limine*, Kristine and Rudiger sought to exclude from the trial any evidence controverting the terms of the written Iggelbach contract. They contended that, because plaintiffs had not pleaded a claim under that agreement and were not seeking its modification or enforcement, any reference to it was irrelevant. Further, Kristine and Rudiger contended, the Iggelbach contract, having been executed and notarized in Germany, was presumed accurate under German law, absent adequate proof of inaccuracy. They contended, additionally, that Oregon courts lacked jurisdiction to consider the Iggelbach contract, that Oregon was a *forum non conveniens*, and, finally, that the parol evidence rule and the statute of frauds barred the court's consideration of any evidence offered to contradict the terms of the written Iggelbach agreement.

Freidrich and Erika opposed the motion, explaining they had made no reference in their pleadings to the Iggelbach contract because they were not seeking its enforcement or modification. The parties had, in fact, stipulated that the primary issue to be resolved by the court was "the parties 'respective claims' to the proceeds of the sale of the" Oregon ranch. In plaintiffs' view, however, evidence of the circumstances leading up to the purchase of the ranch—including plaintiffs' use of the Iggelbach house purchase money to buy the ranch—was relevant to the question of ownership of the ranch.

The trial court initially took Kristine and Rudiger's motion under advisement and admitted evidence of the circumstances of the Iggelbach contract subject to their continuing objection. Then, at the end of the first day of trial, the court overruled defendants' objections to admission of the evidence and denied defendants' motion *in limine*, explaining:

"As far as the [plaintiffs'] testimony goes to this point, I'm going to overrule the objection on statute of frauds

because we're—there's no writing that anybody's attempting to overturn at this point, or it doesn't come under the statute of frauds, and I can explain that at some point if necessary, but it doesn't come under the statute of frauds.

"I'm overruling it on subject matter jurisdiction because again the issue isn't to undo that transaction. I'm just letting the information come in to explain the transaction, not to overrule it.

"And for the same reason, I'm * * * denying the motion *in limine*, however you want to put that, both things, on the statute of limitations argument because again we're not—the purpose here is not to change the Iggelbach house contract.

"And as far as the parol evidence rule, I'm allowing the testimony thus far as evidence of the circumstances under which the agreement was made."

Thus, over defendants' objections, plaintiffs were allowed to offer, and the trial court admitted evidence that, despite the stated purchase price of DM 49,500 in the written agreement, the consideration for the German rental house in Iggelbach was actually DM 350,000, and that the parties had intended that, instead of paying that amount to plaintiffs, defendants would apply it toward the purchase of the Oregon ranch *for plaintiffs*. Over defendants' continuing objection, the trial court admitted and considered plaintiffs' evidence that, as an advance on the purchase of the Iggelbach house, Kristine and Rudiger had transferred DM 320,000 to the United States to purchase the ranch. The trial court also considered plaintiffs' evidence that, at Rudiger's request, the full amount of consideration for the sale of the Iggelbach house was not stated in the contract but, rather, was stated as DM 49,500, which had been the property's value in 1914.

For their part, defendants testified that when they took possession of the Iggelbach house, it had fallen into disrepair, and they suggested it was only worth the DM 49,500 purchase price stated in the sale contract. Consistently with Freidrich's testimony, Kristine testified that all funds for the purchase of the Oregon property had come from accounts owned by her and Rudiger. At the same time, she did not expressly deny that those funds were paid on behalf of her

parents as part of the DM 350,000 purchase price owed for the Iggelbach house. Neither Kristine nor Rudiger directly contradicted plaintiffs' description of the basic elements of the Iggelbach transaction. They instead disputed the admissibility of the evidence that plaintiffs offered concerning that transaction.

The trial court agreed with plaintiffs' version of the facts and implicitly found plaintiffs more credible. The court made findings that plaintiffs desired to sell the Iggelbach home so they could purchase land in Oregon; the parties had agreed that the Iggelbach house had a value of approximately DM 350,000; the parties had agreed that defendants would purchase the Iggelbach house; the parties had chosen not to state the full consideration in the Iggelbach contract for some reason; and, finally, most of the funds transferred to Oregon for the purchase of the ranch represented defendants' consideration for the purchase of the Iggelbach house. The court found that defendants also invested money and labor in the ranch property and the development of the business, and through that investment, defendants acquired an interest in the Oregon property. The court further found that under the 1994 proposed settlement, Kristine would have received approximately 20 to 25 percent of the value of the property. As noted, the trial court determined that the entire ranch property should be sold and the proceeds divided, with plaintiffs to receive 75 percent and defendants the remaining 25 percent of the proceeds.

On appeal, defendants Kristine and Rudiger raise four assignments of error: (1) They contend that the trial court erred in denying their motion *in limine* to exclude evidence of the circumstances of the Iggelbach house contract and sale, including that the consideration for their purchase of the house was DM 350,000, and not DM 49,500, and that most of defendants' consideration for the Iggelbach house went to the purchase of the Oregon property. (2) They contend that the trial court erred in overruling their trial objections to the admission of any evidence controverting the terms of the written Iggelbach contract. (3) They contend that the trial court erred in denying defendants' ORCP 54 B(2) motion to dismiss plaintiffs' allegedly improperly pled "claim" to modify the Iggelbach contract. (4) Finally, they

contend that in light of the trial court's erroneous admission of evidence, the trial court erred in its division of the proceeds from the sale of the ranch. We note that defendants request that we remand the case for a new trial and do not ask us on review *de novo* to alter the 25 percent allocation of sale proceeds to them.

■■ Underlying all of defendants' assignments of error is their assertion that plaintiffs' claims present a challenge to the Iggelbach contract. They argue that the practical effect of the trial court's rulings allowing the disputed evidence was to give effect to a different agreement than the one the parties executed. Because of that, they contend, the parol evidence rule and the statute of frauds come into play in considering the admissibility of that evidence. Cases involving the parol evidence rule and the statute of frauds can involve both questions of law for the court and questions of fact for the fact-finder. *See Hatley v. Stafford*, 284 Or 523, 533, 588 P2d 603 (1978) (under parol evidence rule, the court decides whether parties intended writing to be a complete integration but does not decide whether alleged oral terms actually were agreed upon); *McInnis v. Lind*, 198 Or App 139, 146, 108 P3d 578 (2005) (statute of frauds cases involve questions of law for the court and questions of fact, or questions of mixed law and fact, which are for the jury with proper instructions from the court). In this case, the primary issue—whether the extrinsic evidence was properly admitted in light of those rules—is a legal question, and we review the trial court's rulings concerning the admissibility of the evidence for errors of law.

■ Defendants assert that the disputed evidence is inadmissible under the statute of frauds, because it contradicts the written and fully integrated Iggelbach contract. The statute of frauds, ORS 41.580, provides:

"(1) In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party; *evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law*:

"* * * * *

"(e) An agreement * * * for the sale of real property[.]"

(Emphasis added.) The Supreme Court has said that the statute of frauds exists "to prevent the fraudulent setting up of pretended agreements, then supporting it by perjury," and for the purpose of requiring that all contracts touching lands are reduced to writing so as to avoid mistakes arising from the interpretation of memory or from the honest mistakes of witnesses after a lapse of time. *Brown v. Lord*, 7 Or 302, 309 (1879). That is, the rules relating to the statute of frauds pertain to the establishment or enforcement of the contract itself. As the Supreme Court said in *Golden v. Golden*, 273 Or 506, 510, 541 P2d 1397 (1975),

> "it can be said that the purpose of the Statute of Frauds is to prevent the enforcement of oral contracts relating to land; *the statute is not operative when evidence of the oral contract is used not to enforce the contract but to obtain other relief.*"

(Emphasis added.) In this case, the evidence of the parties' oral agreement was not offered for the purpose of seeking enforcement or modification of the Iggelbach contract, but in support of plaintiffs' proof of their ownership interest in the ranch. In addition, the evidence concerned an oral agreement that had been fully performed, and, for that reason as well, the statute of frauds does not apply. *See, e.g., Grover v. Sturgeon*, 255 Or 578, 584, 469 P2d 617 (1970) (statute of frauds has no application where the oral promise has been performed). We conclude, as did the trial court, that the statute of frauds does not bar the admission of that evidence.

We reach the same conclusion with regard to defendants' argument under the parol evidence rule. Defendants contend that the disputed evidence is not admissible under the parol evidence rule because it contradicts the express terms of the Iggelbach contract.

The parol evidence rule is stated in ORS 41.740:

> "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, *no evidence of the terms of the agreement,* other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However

> *this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220,* or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties."

(Emphasis added.) As we recently said in *Wirth v. Sierra Cascade, LLC,* 234 Or App 740, 771, 230 P3d 29, *rev den,* 348 Or 669 (2010), the parol evidence rule is a substantive rule, because it declares that certain kinds of facts are legally ineffective in the substantive law governing the parties' contractual relationship. *See also Abercrombie v. Hayden Corp.,* 320 Or 279, 286, 883 P2d 845 (1994) (same). The parol evidence rule has an evidentiary consequence as well, because it requires the exclusion of evidence extrinsic to a fully integrated written agreement—that is, parol evidence—offered

> "for the purpose of adding to, subtracting from, altering, varying or contradicting the terms of the written contract or to control its legal operation or effect, and * * * all oral negotiations or stipulations between the parties preceding or accompanying the execution of the written contract are regarded as merged in it[.]"

*Hyland v. Oregon Agricultural Co.,* 111 Or 212, 217, 225 P 728 (1924). The effect of the rule is that, as between the parties to a contract that is complete in itself and fully integrated, there is a conclusive presumption that the agreement is the embodiment of the terms of their undertaking. *Id.*

The prerequisite to application of the parol evidence rule, that the agreement be "integrated," means that the agreement is one that the parties intended to be a final expression of some or all of the terms of the agreement. *Abercrombie,* 320 Or at 287-88. The parol evidence rule applies only to those aspects of a bargain that the parties intend to memorialize in such a writing. It does not come into play if the parties do not intend the writing to embody their final agreement, or when they intend the writing to contain only part of their agreement. *Hatley,* 284 Or at 527. To determine whether a contract is integrated, the court may consider all relevant evidence, including parol evidence. *Abercrombie,* 320 Or at 287-88. If the court determines that the writing is not integrated because it is not a full expression

of all or some of the terms of the agreement, the extrinsic evidence is admissible. *Id*.

We conclude that the trial court did not err in considering the disputed evidence. As noted, ORS 41.740 itself provides that the parol evidence rule "does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220." In turn, ORS 42.220 provides:

> "In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."

Thus, in construing the Iggelbach contract, and in determining whether it was fully integrated, the trial court was permitted to consider evidence of the circumstances under which it was made and to which it related, *Abercrombie*, 320 Or at 287-88, including extrinsic evidence concerning the underlying purpose of the agreement and the parties' intentions with respect to payment of consideration. We conclude for that reason that it was not error for the trial court to consider the disputed evidence.

The trial court also found that the Iggelbach contract did not recite the full consideration for the house, *i.e.*, that it was not fully integrated. In light of our conclusion that the court could consider the factual circumstances surrounding the making of the agreement, on *de novo* review, we agree with the trial court's finding that the Iggelbach contract did not recite the full consideration for the parties' agreement. The Iggelbach contract was not fully integrated with respect to the statement of consideration, and extrinsic evidence was admissible to establish that consideration. Accordingly, we need not reach plaintiffs' additional countervailing argument that the rule against admission of parol evidence concerning an instrument is inapplicable when a party does not seek to enforce or modify that instrument.

Because we have concluded that plaintiffs' claim concerning the Oregon ranch was not a claim for enforcement or modification of the terms of the Iggelbach contract, we also

reject defendants' contentions that plaintiffs' claim was improperly pled or barred by either German or Oregon statutes of limitations that might apply to such a claim. Similarly, we reject defendants' contentions that the trial court lacked jurisdiction to consider disputes involving the German property or that the Oregon court was *forum non conveniens*, which are based on defendants' incorrect assertion that plaintiffs were seeking relief under the Iggelbach contract.

Affirmed.