Submitted December 11, 2013, reversed and remanded on plaintiff's claim to partition real property; otherwise affirmed September 17, 2014

Carrie LAY,
*Plaintiff-Appellant,*

*v.*

Gerald Vern RAYMOND
and Bell "A" Grazing Cooperative,
an Oregon cooperative,
*Defendants-Respondents,*

*and*

Virgil WILSON
and Leah Wilson,
Trustees of Wilson Family Trust,
*Defendants.*

Harney County Circuit Court
1012349CV; A152356

336 P3d 550

Claud Ingram filed the briefs for appellant.

Mike Kilpatrick filed the brief for respondent Gerald Vern Raymond.

H. Clifford Looney waived appearance for respondent Bell "A" Grazing Cooperative.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

In this partition action under ORS 105.205, plaintiff sought to partition a ranch property that she and defendant hold by a deed. The trial court concluded that, according to that deed, she and defendant hold the property as tenants in common in a life estate with cross-contingent remainders. The trial court determined that, as a result of that cotenancy, for a period of more than three years during which defendant excluded plaintiff from the property, plaintiff was entitled to a one-half share of the reasonable rental value for portions of the property, along with a one-half share of the profits from cattle grazing and hay production, less expenses for costs and labor. The trial court ruled that partition was "impossible," however, because no evidence had been presented as to the value of either party's life estate. Plaintiff now argues that the trial court erred by deducting expenses from the ranch's profits and by denying her claim for partition. Although we conclude that the trial court did not err in dividing the profits and expenses of the property for the period during which plaintiff was excluded, we conclude that the trial court erred when it denied plaintiff's partition claim. Accordingly, we reverse and remand on plaintiff's claim to partition real property and otherwise affirm.

We set forth the relevant facts in a manner consistent with the trial court's express and implicit factual findings, and we review for errors of law.[1] *Eagles Five, LLC v. Lawton*, 250 Or App 413, 415, 415-16 n 2, 280 P3d 1017

---

[1] Plaintiff asserts that our review in this case is *de novo*. Under the 2009 amendments to ORS 19.415(3), Or Laws 2009, ch 231, § 2, we have discretion to review *de novo* in this type of case. *See* ORS 19.415(3)(b) ("Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, [this court], acting in its sole discretion, may try the cause anew upon the record[.]"); *Berger v. Stephan*, 241 Or App 399, 402, 402 n 5, 250 P3d 954, *rev den*, 350 Or 716 (2011) (applying *de novo* review in a partition action under previous version of statute, but recognizing that 2009 amendments to ORS 19.415 changed standard of review). We adhere to a "presumption against the exercise of discretion" to review *de novo*, such that we conduct that review "only in exceptional cases." ORAP 5.40(8)(c). An appellant seeking *de novo* review "shall concisely state the reasons why the court should do so." ORAP 5.40(8)(a). Here, plaintiff has not explained why we should conduct *de novo* review, and this is not an exceptional case calling for such review. Accordingly, we decline to exercise our discretion to review *de novo*.

(2012). Defendant lived on and operated a ranch comprising several hundred acres that he inherited from his parents. He lived in a house on the property, which was otherwise primarily used as a pasture for cattle grazing and hay production. In 2001, defendant deeded to himself and plaintiff, with whom he had a son, the ranch property "with rights of survivorship."

In 2004, defendant and Bell "A" Grazing Cooperative (Bell) entered into a lease agreement, with an option to purchase, for 160 acres of the ranch property. The agreement provided that Bell would pay defendant $5,000 per year to lease the property and that "[e]ach five year increment of $25,000.00 will be applied toward the total purchase price of $125,000.00." At the end of any five-year term, Bell could "renew the lease or pay the remaining balance in full for the purchase of said property."

Several years later, plaintiff's relationship with defendant broke down. Beginning in 2009, defendant excluded plaintiff from the property. Plaintiff filed suit, seeking partition of the real property—a partition in kind—with one half to plaintiff and one half to defendant, after protecting Bell's interests. In the alternative, plaintiff requested that the "property be sold at public sale." Plaintiff also brought a claim for "one half of the rental moneys collected [f]rom [Bell] and one half of the fair rental value of the remaining real property."[2]

In his answer, defendant stated that "the partition requested by Plaintiff would be unjust because of the discrepancy in the amount of contribution to the original property and the money, improvements and labor which Defendant has expended on the property." Defendant also brought a counterclaim for accounting and contribution. In support, he alleged that he "paid all the expenses regarding the property including but not limited to mortgage payments,

---

[2] In her complaint, plaintiff also named two other defendants: Bell, as the holder of a lease on the property, and the trustees of the Wilson Family Trust, as the holders of a mortgage on the property "to secure a debt owed to them by Defendant Gerald Vern Raymond." The trustees are not parties to this appeal, and Bell waived appearance. Any reference to "defendant" in this opinion is to Gerald Vern Raymond only.

interest payments, taxes, licenses, insurance, maintenance and repairs." He further alleged that he was "entitled to the value of his labor to operate and maintain" the ranch "in the amount of $3,000 a month."

The parties presented evidence in support of their claims at a bench trial, and the court later issued a letter opinion and general judgment. As to the agreement with Bell, the trial court concluded that "both Plaintiff and [defendant] have ratified [that agreement] and they are bound by the terms and conditions thereof." The court ruled that all future rent payments were to be split equally between plaintiff and defendant, and, upon paying the remaining balance of $75,000, Bell "shall be entitled to a proper deed" from plaintiff and defendant "free of all encumbrances."

The trial court then turned to the claims for accounting and contribution for the years that plaintiff was excluded from the property. The court reasoned that, "[a]bsent the forcible exclusion by one party of the other or other agreement, there is no right or obligation to share profits and expenses between them" and, until the time defendant excluded plaintiff, "neither party had the right to seek compensation from the other for the use of the property." However, because defendant had excluded plaintiff from the property from 2009 to June 2012, the court determined that plaintiff was entitled to reasonable rent and profits of the property. The court found that the reasonable rental value of the house, separated from the other real estate, was $650 per month; each party was entitled to half that amount. The court also ruled that each party was entitled to one-half of the net profit (*i.e.*, income less expenses) of the pasture and hay production of the property. The real property's net profit, "after proper deductions for costs and labor," was $4,700 in 2009, $4,000 in 2010, and $5,000 for 2011. Further, although the court rejected defendant's claim that he should be awarded an additional $3,000 per month for his work as a "ranch manager," the court awarded defendant $325 per month "for labor to manage and maintain the property." In the court's view, those values represented an "equitable and just" result, given that plaintiff "makes no labor contributions and is paid this amount based upon her life estate," and defendant "maintains and manages the

property, and provides the labor, and some non-joint equipment to hay the property."[3]

Finally, with respect to plaintiff's request to partition the property, the trial court concluded that

"[p]laintiff and [defendant] have been the owners as tenants in common in the life estate with cross contingent remainders since 2001 in the real property described in Plaintiff's Complaint. Due to the lack of any evidence as to the value of either [party's] life estate, nor their life expectancies, partition of the life estate is impossible to perform and Plaintiff's claim to partition the real property is denied."

In its letter opinion, the court acknowledged that, "[c]oncerning future years, ongoing litigation will result in attorney fees and costs that exceed payments to be made or received." The court then offered a "suggestion of how to address future years":

"I suggest a splitting of the pasture income, and that the parties assign a value for a ton of hay standing in the field after making a reasonable deduction for the cost of growing the hay and maintaining fences, etc. on the property."

On appeal, plaintiff first claims that, regarding the time that she was excluded from the ranch, the trial court erred in deducting the expenses of the ranch operation from the ranch profits, half of which were awarded to her. At the start of trial, plaintiff filed a motion *in limine*, asking the court to prohibit the introduction of evidence regarding those expenses because "ordinary expenses are not available as an offset in a partition action." The trial court did not rule on the motion, explaining that it would allow presentation of the evidence and would later decide how to calculate any division of profits and expenses between the parties. Ultimately, the trial court awarded plaintiff the profits from the pasture and hay production, with "deductions for costs and labor," and separately awarded defendant $325 per month "for labor to manage and maintain the property."

---

[3] The trial court also concluded that certain personal property owned by plaintiff and defendant as tenants in common should be sold at public auction. That determination is not at issue on appeal.

Generally, "one or more of several tenants in common may occupy realty without incurring liability for payment of rent for use and occupation so long as they do not exclude other cotenants from the exercise of similar rights." *Hanns v. Hanns*, 246 Or 282, 310, 423 P2d 499 (1967). But where, as here, "one cotenant's use of the property in fact excludes the others from enjoyment of their interest, the occupying cotenant will be required to reimburse the others for the rental value of their interest." *Palmer v. Protrka*, 257 Or 23, 33 n 12, 476 P2d 185 (1970). Accordingly, for the time plaintiff was excluded from the property, she was awarded half of the rental value for the house on the property, and she was awarded half of the rental payments that Bell paid to lease 160 acres of the property. With respect to her required contribution, plaintiff correctly notes that she was responsible for any expenses to maintain the property in good repair, as well as expenses such as property taxes, encumbrances on the land, and necessary insurance. *See Tri-County Center Trust v. Martin*, 225 Or App 417, 429, 201 P3d 293, *rev den*, 346 Or 258 (2009) (so stating) (citing *Palmer*, 257 Or at 31). And she acknowledges that she was responsible for permanent improvements to the extent and amount they increased the sale value of the property. *Palmer*, 257 Or at 31-32.

As for the award of profits from the pasture and hay production of the property,[4] however, plaintiff argues that it was error to deduct costs and labor expenses of the ranch operation. Defendant disagrees, asserting that, for this "income producing property," there "are only profits

---

[4] The parties agree that, apart from reasonable rent, an occupying cotenant may also be required to reimburse the other for a share of the profits gained from the property while the other is excluded. *See generally* Herbert Thorndike Tiffany, 2 *The Law of Real Property* § 450, 265 (3d ed 1975) ("If one tenant is actually ousted or excluded by his cotenant from possession of the whole or any part of the property, the former may recover from the latter to the extent of the value of the use of which he has been deprived, whether the latter does or does not receive rents or profits from others."); Annotation, *Accountability of Cotenants for Rents and Profits or Use and Occupation*, 51 ALR 2d 388 (1957) ("The few later cases which in any way touch the point appear to indicate that an occupying cotenant who ousts or excludes his cotenants from the land ordinarily becomes accountable to them respecting the profits of his occupancy."); *Crops*, 21A Am Jur 2d 601 § 11 (1998) ("[A]n occupying tenant who ousts or excludes his or her cotenants from the land is accountable to them respecting the profits realized from crops which such tenant raised on the land.").

because of labor and money expended to operate the ranch." We agree with defendant that the award of profits from this part of the ranch operation is subject to a deduction for costs and labor expenses.

At trial, defendant presented evidence that to keep the land in an appropriate condition for cattle grazing and hay production, he contributed his labor, paid for the labor of others, and incurred other costs; for example, defendant dragged and irrigated fields and repaired cattle fences. Because that work led to an increase in profits from the land, plaintiff, as the beneficiary of those profits for the years she was excluded, is responsible for those efforts to the extent they increased the profits. The Supreme Court has endorsed that kind of equitable division in a case with similar facts, and we have done the same. In *Currey et al. v. Smith*, 105 Or 82, 89-90, 209 P 232 (1922), for example, the court concluded that a nonoccupying cotenant was "not entitled to damages for rents and profits," where "[h]e stood by and allowed [the occupying cotenant] to pay the taxes for all those years, to ditch and irrigate the land, to build two miles of fencing, and otherwise to improve the property under a mistaken belief that he was the owner, and such improvements ought to be a fair recompense for any meager profits * * * received from rent." Similarly, in *Albright v. Albright*, 73 Or App 410, 412-13, 699 P2d 195 (1985), we concluded that a tenant in common who managed property had a common-law duty to account to his cotenant for rents received, and we affirmed the trial court's ruling that the managing cotenant was entitled to deduct reasonable expenses that were in line with "an industry average evidenced by expert testimony."[5] Likewise, here, the trial court properly took into account defendant's expenses to generate income from the property, and it did not err in deducting those expenses when awarding plaintiff her share of the profits.

---

[5] *See also* Tiffany, 2 *The Law of Real Property* § 462 at 285-86 ("[A] tenant making improvements is regarded in equity as entitled to the amount of the increase in the rent or profits due to such improvements, as against a claim by his cotenants for a part of the rent or profits."); *id.* § 461 at 282-83 (explaining that, in a "suit against [a cotenant] for an accounting for rents or profits," a party is entitled "to an allowance for ordinary repairs made by him, and for repairs which conduced to an increase in the profits from the property").

Plaintiff next argues that the trial court erred when it "refused to follow the statutory procedure for partition and refused to appoint referees to partition the property." Plaintiff asserts that, as a tenant in common of the life estate of the property, she has a right to partition, and the trial court did not have discretion to deny her that remedy.

We begin with the statutory framework—the "hierarchy of dispositional alternatives"—that governs plaintiff's partition action. *Fike v. Sharer*, 280 Or 577, 580, 571 P2d 1252 (1977). ORS 105.205 provides:

> "When several persons hold real property as tenants in common, in which one or more of them have an estate of inheritance, or for life or years, or when several persons hold as tenants in common a vested remainder or reversion in any real property, any one or more of them may maintain a suit for the partition of the real property according to the respective rights of the persons interested therein, and for a sale of all or a part of the property if it appears that a partition cannot be had without great prejudice to the owner."

Thus, a person holding real property as a tenant in common—including a person who holds an "estate * * * for life" in that property—may bring a suit for partition in kind—*i.e.*, the physical division of the property into separate portions. *Id.*; *see also Church v. Woods*, 190 Or App 112, 117, 77 P3d 1150 (2003) (explaining that, where the parties hold "an undivided life estate in the real property with a cross-contingent remainder," each "interest is divisible, in that it may be partitioned and sold, even though neither co-owner can force the sale of the estate in fee simple before the other dies"). Where that partition in kind cannot be had "without great prejudice," the court may order a public sale. ORS 105.205. And if the court finds great prejudice would result from a public sale, it may order a private sale. ORS 105.210. In short, the statutes "contemplate[] only two outcomes to a partition suit: partition in kind or sale." *Maupin v. Opie*, 156 Or App 52, 62, 964 P2d 1117, *rev den*, 328 Or 194 (1998). Under that framework, plaintiff seeks the partition of the property for life or, in the alternative, the sale of the parties' life estates. As she explains, "[i]f the property is partitioned in kind, then on the death of the first to die, his or her life estate ends and the survivor owns the entire property,"

and "[i]f the property is sold, the party buying the property acquires the right to use the entire property until the death of the first to die."[6]

 We start with the threshold question in any partition action: whether plaintiff is entitled to a partition in kind of the property. See *Miller v. Miller*, 101 Or App 371, 377, 790 P2d 1184 (1990) (stating that the partition statutes express "a statutory preference for partition in kind"). Here the trial court determined that, because plaintiff holds an undivided one-half interest for life in the property as a tenant in common, plaintiff had a right to a partition in kind.[7] *See* ORS 205.240 ("The rights of the plaintiffs and defendants may be put in issue, tried and determined in the suit."). Having made that determination, the trial court could then order a partition, ORS 105.205, and appoint referees to "divide the property and allot the several portions thereof to the respective parties, quality and quantity relatively considered, according to the respective rights of the parties as

---

[6] Plaintiff does not assert that she is entitled to force the partition of the contingent remainders that she and defendant hold. That view is informed by our opinion in *Church*, 190 Or App at 117, where we explained that, where parties hold property as tenants in common in the life estate with cross-contingent remainders, the life estate "interest is divisible, in that it may be partitioned and sold, even though neither co-owner can force the sale of the estate in fee simple before the other dies." *See also Halleck v. Halleck et al*, 216 Or 23, 41, 337 P2d 330 (1959) ("The contingent remainder which each co-tenant has cannot be defeated by any act of his co-tenant."); *see generally* Michael Allan Wolf ed., *Powell on Real Property* § 50.07[3][d] (2000) ("If the owner is a cotenant of both the life estate and the future interest, he or she may have complete partition under a statute authorizing partition of the future interest, or division of the life estate only in the absence of such a statute."). Accordingly, we consider only the partition or sale of the life estate.

[7] On appeal, defendant does not respond to plaintiff's argument regarding the trial court's partition ruling and instead asserts that "[t]hese parties are not cotenants as required by the statute" and "Oregon's statutory scheme for partition requires a present co-tenancy[.]" Defendant appears to argue either that (1) the trial court erred in construing the deed and concluding that the parties own the property as tenants in common in the life estate with cross-contingent remainders; or (2) the trial court erred in ruling that plaintiff, as a tenant in common in the life estate of the property, could seek partition or sale of the life estate under ORS 105.205. Neither argument is cognizable because defendant has not filed a cross-appeal. A respondent's argument must be raised in a cross-appeal when, "if successful, it would yield relief different from that afforded under the trial court's judgment." *Samuel v. King*, 186 Or App 684, 690, 64 P3d 1206, *rev den*, 335 Or 443 (2003). To the extent that defendant seeks to alter the judgment rather than sustain it, we do not consider defendant's contentions as to the trial court's partition ruling on appeal.

determined by the court." ORS 105.255. The trial court did not take those steps, however, concluding that partition was "impossible" because there was no evidence of the value of the parties' life estates or life expectancies. In light of the dispositional alternatives set out in the partition statutes, that ruling was error.

To be sure, the value of each party's life estate—determined in part by each party's life expectancy—is relevant to determine whether a sale, rather than a partition in kind, should be ordered because the partition will cause "great prejudice" to the party. ORS 105.205; *Fike*, 280 Or at 581 (explaining that the partition statutes lay out the remedies of partition in kind, public sale, and private sale "in order of preference"). The "established test" for great prejudice is "whether the value of the share of each [owner] in case of a partition would be materially less than his share of the money equivalent that could probably be obtained from the whole." *Fike*, 280 Or at 582 (internal quotation marks omitted). And to make that determination in this case, the trial court would need to determine the value of each party's life estate in two separate parcels of the ranch property and compare the sum of those values to the market value of the entire ranch property subject to each party's life estate. That inquiry, in turn, would require the court to determine the life expectancies of the parties. *See* ORS 105.320 ("Any person entitled to an estate for life or years in any undivided part of the property, whose estate has been sold, shall be entitled to receive such sum in gross as is, deemed, *upon principles of law applicable to annuities*, a reasonable satisfaction for the estate." (Emphasis added.)).

But the *absence* of that evidence is not a basis to *deny* plaintiff's request for a partition in kind. Just the opposite is true. Where there is no evidence that a partition in kind would cause great prejudice to the owners and a cotenant has shown entitlement to relief under ORS 105.205, ORS 105.245 requires the court to order the partition in kind:

"If it *** appears *by the evidence to the satisfaction of the court* *** that the property or any part of it is so situated that partition cannot be made without great prejudice

> to the owners, the court may order a sale of the property
> \* \* \*. *Otherwise*, upon the requisite proofs being made, it
> *shall* enter a judgment requiring a partition according to
> the respective rights of the parties, as ascertained by the
> court."

(Emphasis added.) Put a different way, evidence that a partition would cause great prejudice enables the court to order a sale rather than a partition in kind, but the lack of that evidence is not a basis to deny plaintiff's request for a partition in kind. For that reason, we have described the right of tenants in common to partition as "absolute," even though there are a range of possible remedies in a partition action.[8] *Maupin*, 156 Or App at 61. Where, as here, plaintiff established her right to partition and neither party presented evidence that a partition in kind would cause great prejudice to the parties, ORS 105.245 required the trial court to enter a judgment ordering partition in kind and to appoint referees to partition the property. It follows that the trial court erred when it denied plaintiff's partition claim.

Reversed and remanded on plaintiff's claim to partition real property; otherwise affirmed.

---

[8] In *McMillan v. Follansbee*, 194 Or App 145, 151, 93 P3d 809 (2004), we observed that "a cotenant is entitled to obtain a partition of commonly owned property as a matter of right and not merely at the discretion of the court." Although we also recognized that the right to partition is "subject to limitations" in certain situations, such as when the parties agree that real property will be held in cotenancy and not partitioned, those limitations are not at issue in this appeal.